[No. 32756-9-I.    Division One.    July 25, 1994.]

LARENA CAMPBELL, *Appellant*, v. SEATTLE ENGINE
REBUILDERS & REMANUFACTURING, INC., ET AL,
*Respondents.*

*Stephen D. Cramer* and *Law Offices of Cramer & Goodman,* for appellant.

*Jerome R. Cronk,* for respondents.

COLEMAN, J. — Larena Campbell appeals the trial court's award of damages in her favor for Seattle Engine Rebuilders & Remanufacturing, Inc.'s (SERR) violation of the Automotive Repair Act (ARA). RCW 46.71. Campbell contends that the trial court erred by ruling that she was required to submit independent proof of "public interest" impact in order to prevail on her Consumer Protection Act (CPA) claim. RCW 19.86. SERR cross-appeals the same award, arguing that the trial court erred by finding that it unlawfully asserted a possessory lien on Campbell's vehicle. We affirm.

During May 1991, Campbell purchased a rebuilt 1977 Chrysler 400-cubic-inch engine from SERR for $1,363.32. The purchase price included an engine core deposit of $350, which was to be refunded to Campbell upon delivery of an existing engine core from her 1977 Chrysler automobile. As a condition of the sale, SERR provided Campbell with a "Limited Engine Assembly Warranty". The warranty stated that SERR would provide parts and labor for correction of defects in materials and workmanship for a period of 12 months or 12,000 miles after delivery of the engine, whichever came first.

Campbell took delivery of the Chrysler 400 engine from SERR during June 1991. Shortly afterward, Campbell delivered the engine core to SERR and received her $350 credit. Campbell's son, Ian, installed the engine in her automobile. After Campbell had operated the automobile and rebuilt engine for approximately 3,000 miles, the engine failed. In particular, Campbell observed the absence of oil pressure when she attempted to start the engine. At the time of the failure, SERR's warranty was still in effect.

Campbell immediately contacted SERR and advised them of the engine failure. James E. Nichols, the principal officer, director, and shareholder of SERR, directed Campbell to

deliver the automobile to the SERR facility, stating: "[W]e will take a look at it". Campbell and Nichols did not discuss possible charges for work performed on the engine in the event that the defect was not covered by the warranty. Campbell never dealt face to face with Nichols or any other SERR employee.

SERR conducted a preliminary investigation on Campbell's car and determined that the entire engine would have to be disassembled. After retaining Campbell's vehicle for approximately 6 weeks, SERR disassembled the engine and concluded that the engine failure was caused by owner abuse and was therefore not covered by the warranty.[1] SERR thereafter sent an invoice to Campbell for $795, claiming expenses incurred by SERR for disassembling the engine and determining the cause of the engine failure. SERR also threatened to assert a possessory or chattel lien on the vehicle and to claim storage charges if Campbell did not pay the invoice amount. Campbell refused to pay the amount claimed and filed a summons and complaint for damages against SERR and Nichols. SERR and Nichols counterclaimed.

The matter proceeded to arbitration, where Campbell received an award in her favor. Both parties appealed the award. On March 1, 1993, a bench trial was heard by the Honorable John Riley, judge pro tempore. On April 21, 1993, the court entered Findings of Fact and Conclusions of Law, finding that: (1) SERR had wrongfully asserted a possessory lien on Campbell's vehicle; (2) SERR's continued possession of Campbell's vehicle reduced its value to salvage value only; and (3) Campbell sustained actual and direct damages of $1,850.

In its conclusions of law, the trial court ruled that Campbell had not proved a breach of contract. The trial court went on to state, however, that SERR had violated the ARA by wrongfully asserting a possessory lien on Campbell's car. According to the trial court, SERR's violation of the ARA

---

[1]SERR claimed that Campbell's son had failed to properly clean the oil pan prior to assembly.

amounted to a per se violation of the CPA but, notwithstanding this per se violation, the "public interest" element of the CPA was a separate element of proof. Therefore, the court stated, because Campbell had not submitted independent proof that the public interest was affected by the transaction, Campbell's CPA claim required dismissal. The trial court awarded Campbell $1,850 in damages, including attorney fees and costs, for SERR's violation of the ARA. The trial court declined to award attorney fees or exemplary damages under RCW 19.86.090. Both parties appeal.[2]

The first issue we address is whether SERR obtained the authorization necessary to assert a possessory lien under the ARA. This act specifically governs the circumstances in which an automotive repairman can assert a possessory lien. RCW 46.71.050 provides in relevant part:

> A repairman who performs work or supplies parts which are not a part of the written price estimate or which together exceed one hundred ten percent of the written price estimate, without the oral or written authorization of the customer or who is not required by RCW 46.71.040 to provide the customer with a written price estimate or a choice of estimate alternatives shall be barred from asserting a possessory or chattel lien for the amount of the unauthorized parts or labor upon the motor vehicle.

Under this provision, an automotive repairman's right to claim a possessory lien is strictly limited. The first derivation of this provision provides that in circumstances where an automotive repairman is required to provide a written estimate under RCW 46.71.040, he or she cannot claim a lien unless the written estimate was actually given. *State v. Pike*, 118 Wn.2d 585, 592, 826 P.2d 152 (1992). If the written estimate was given, then the automotive repairman is nevertheless barred from claiming a lien for work performed outside of the written estimate or for work exceeding 110 percent of the estimate unless he or she received oral or written authorization for such work. *Pike*, at 593.

---

[2]This opinion addresses SERR's cross appeal first because it challenges, as an initial matter, whether SERR violated the ARA at all.

██ Alternatively, the second derivation of this provision provides that an automotive repairman may, in certain circumstances, claim a lien despite the absence of a written estimate. In particular, if the estimated price of repair is under $75 or the automobile was brought to the automotive repairman without any face-to-face contact, then the automotive repairman need not provide the customer with a written estimate. RCW 46.71.040(1). In the absence of a written estimate, an automotive repairman may assert a valid lien only when the customer gives his or her oral or written authorization to proceed. *Pike*, at 593.

It is undisputed that Campbell never met face to face with Nichols or any other SERR employee. In this case, therefore, SERR's right to claim a possessory lien turns on the second derivation of RCW 46.71.050. Specifically, despite the absence of a written statement, SERR was entitled to assert a possessory lien only if Campbell authorized the work performed. SERR contends that it properly asserted a possessory lien under this provision because Campbell, through her conduct, gave an *implied* authorization. We disagree and find that SERR's failure to obtain Campbell's express oral or written authorization precluded SERR from properly asserting a possessory lien under the ARA.

Because the ARA is a remedial statute, its provisions must be liberally construed. *Pike*, at 591. In particular, full effect must be given to the plain language of the ARA "even where the results sometimes seem harsh to the mechanic's interests." *Pike*, at 591 (citing *I-5 Truck Sales & Serv. Co. v. Underwood*, 32 Wn. App. 4, 11, 645 P.2d 716, *review denied*, 97 Wn.2d 1033 (1982)). The relevant provision in this case, RCW 46.71.050, expressly states that an automotive repairman's right to assert a lien is barred in the absence of "oral or written authorization of the customer". *See also Pike*, at 593. Here, Campbell gave neither. The record reflects that when Campbell's engine failed, she immediately called SERR and explained what had happened. After listening to Campbell, Nichols directed her to bring the car in and that they would "check it out". Campbell complied and had her

car towed to SERR's shop. At no point, however, did SERR attempt to obtain Campbell's oral or written authorization for the work performed. Under the ARA, SERR therefore failed to preserve its right to assert a possessory lien.[3]

It is true, as SERR contends, that by taking her car to the auto shop, Campbell knew that SERR would have to investigate the engine to determine what was the matter. Campbell's conduct, however, cannot amount to an authorization under the ARA for all work performed. The plain language of RCW 46.71.050 requires *express* authorization, either written or oral, by the customer. The purpose of this requirement is clear — it helps to eliminate confusion and misunderstanding between the parties. *See Pike*, at 593 (citing *I-5 Truck Sales*, at 11). This is a case on point. SERR conducted a preliminary investigation of Campbell's engine and determined that the source of the failure could not be diagnosed without a complete disassembly of the engine. Knowing that Campbell would have to pay for the cost of labor and repair if the defect was not under warranty, the burden was on SERR, if it wished to preserve its right to a possessory lien, to obtain Campbell's express oral or written authorization before proceeding further. Having failed to do so, we find that SERR lost its right to assert a possessory lien under the ARA. We next consider whether a plaintiff who prevails on an ARA claim has to independently prove "public interest" impact in order to recover under the CPA.

In *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 719 P.2d 531 (1986), our Supreme Court set forth five essential elements that a plaintiff must prove in order to succeed on a CPA claim. These elements include: (1) an unfair or deceptive act or practice, (2) occurring in the conduct of trade or commerce, (3) affecting the public interest, (4) injuring the plaintiff's business or property, and (5) causation between the act and the injury. *Hang-*

---

[3]In exceptional circumstances, RCW 46.71.047 allows a mechanic to collect for unauthorized repairs where "his or her conduct was reasonable, necessary, and justified under the circumstances." *Clark v. Luepke*, 118 Wn.2d 577, 584, 826 P.2d 147 (1992). SERR, however, makes no claim under this provision.

*man Ridge*, at 784-85. In light of the confusion surrounding private rights of action under the CPA, the court in *Hangman Ridge* then described, in detail, what a plaintiff must show to satisfy each element. As to the first and second elements, the court stated:

> [These] elements may be established by a showing that (1) an act or practice which has a capacity to deceive a substantial portion of the public (2) has occurred in the conduct of any trade or commerce. Alternatively, these two elements may be established by a showing that the alleged act constitutes a per se unfair trade practice. *A per se unfair trade practice exists when a statute which has been declared by the Legislature to constitute an unfair or deceptive act in trade or commerce has been violated.*

(Italics ours.) *Hangman Ridge*, at 785-86. The court then addressed the third element, stating:

> Currently the public interest element may be met in one of two ways: public interest impact may be established [factually], or the violation may satisfy the public interest element per se.
>
> . . . .
>
> . . . *The per se method requires a showing that a statute has been violated which contains a specific legislative declaration of public interest impact.* In *Haner v. Quincy Farms Chems., Inc.*, [97 Wn.2d 753,] 762, [649 P.2d 828 (1982)], we stated the rule, which has continuing validity:
>
> > [U]nless there is a 'specific legislative declaration' of a public interest, the public interest requirement . . . is not per se satisfied . . .
>
> Examples of statutes which include a specific declaration of public interest include RCW 46.70.005 ("The legislature . . . declares that the distribution and sale of vehicles . . . vitally affects . . . the public interest . . ."). *See also* RCW 46.80.005 (public interest in sales of motor vehicle parts); RCW 48.01.030 (public interest in the business of insurance).
>
> . . . .
>
> It is to be emphasized that when a statute containing a legislative public interest pronouncement can be shown to have been violated, only the public interest requirement is satisfied per se. The other four elements of a private CPA action must be separately established.

(Citation omitted. Italics ours.) *Hangman Ridge*, at 789-92.

Campbell assigns error to the trial court's ruling that she needed to submit independent proof of public interest impact

in order to prevail on her CPA claim. In particular, Campbell argues that while the ARA did not specifically include a statement of public interest impact at the time of this action, it was nevertheless incorporated as a concept throughout the text of the ARA. Therefore, Campbell claims, SERR's violation of the ARA amounted to a per se violation of the CPA, thereby entitling her to recovery under the CPA despite her failure to submit independent proof of public interest impact. We disagree.

■ The court's language in *Hangman Ridge* clearly requires a showing of public interest impact, separate and apart from a showing of an unfair and deceptive act, even where the unfair and deceptive act is established per se.[4] In this case, although Campbell established an unfair and deceptive act, she failed to make the required showing of public interest impact that is required for recovery under the CPA. First, Campbell failed at trial to establish public interest impact factually. The trial court's undisputed conclusion of law states: "No evidence was submitted to justify or adequately support a finding of 'public interest' (per *Hangman Ridge)*". Second, at the time of this dispute, the ARA did not include a "specific legislative declaration of public interest impact".[5] *Hangman Ridge*, at 791. Rather, the only relevant legislative declaration provided: "A viola-

---

[4]None of the cases cited by Campbell is to the contrary. They either apply the *Hangman Ridge* analysis or do not address the issue that we are asked to decide. *See Clark v. Luepke*, 118 Wn.2d 577, 826 P.2d 147 (1992); *State v. Pike*, 118 Wn.2d 585, 826 P.2d 152 (1992); *Bill McCurley Chevrolet, Inc. v. Rutz*, 61 Wn. App. 53, 808 P.2d 1167, *review denied*, 117 Wn.2d 1015 (1991); *Evergreen Int'l, Inc. v. American Cas. Co.*, 52 Wn. App. 548, 761 P.2d 964 (1988); *I-5 Truck Sales & Serv. Co. v. Underwood*, 32 Wn. App. 4, 11, 645 P.2d 716, *review denied*, 97 Wn.2d 1033 (1982).

[5]The ARA has subsequently been amended to provide in part as follows:

"The legislature finds that the practices covered by this chapter are matters vitally affecting the public interest for the purpose of applying the consumer protection act, chapter 19.86 RCW." Laws of 1993, ch. 424, § 12, p. 1684. This is clearly the type of legislative declaration contemplated by the *Hangman Ridge* court. No argument has been advanced on appeal, however, that the amendment has retroactive effect.

tion of this chapter is an unfair act or practice in violation of the consumer protection act[.]" RCW 46.71.070. While this declaration establishes an unfair or deceptive act per se, it does not, under the *Hangman Ridge* analysis, establish public interest impact per se. We therefore find that despite SERR's violation of the ARA, the trial court did not err in dismissing Campbell's CPA claim on the basis that she failed to establish public interest impact.

In light of our disposition, neither party is entitled to attorney fees on appeal.

The judgment of the trial court is affirmed.

SCHOLFIELD and AGID, JJ., concur.

Reconsideration denied September 13, 1994.