[No. 39993-8-II.   Division Two.   November 18, 2011.]

DON HAWKINS ET AL., *Petitioners*, v. MA HERLOUISE CARO DIEL
ET AL., *Defendants*, DOBLER MANAGEMENT COMPANY, INC.,
*Respondent.*

*Darrell L. Cochran* and *Jason P. Amala* (of *Pfau Cochran Vertetis Amala PLLC*), for petitioners.

*Everett A. Holum* (of *Everett Holum PS*), for respondent.

¶1 JOHANSON, J. — Don and Geri Hawkins were tenants in an apartment that was damaged when a car drove through a wall. The apartment's management, Dobler Management Company Inc. (DMC), delayed in making the necessary repairs. The Hawkinses sued DMC in district court and

obtained relief in the form of special damages and attorney fees. The Hawkinses nonetheless appealed to superior court on the ground that the district court improperly dismissed their negligence claim for general damages. DMC cross appealed, arguing that the district court erred in excluding certain liability insurance evidence and in awarding the Hawkinses attorney fees. The superior court reversed the district court and remanded for a new trial. We reverse the superior court, holding that the district court properly excluded the evidence of liability insurance, properly dismissed the Hawkinses' claim for general damages, and properly awarded attorney fees to the Hawkinses.

## FACTS

¶2 In April 2006, Ma Herlouise Caro Diel crashed her family's car into the apartment that the Hawkinses rented from DMC. The car created an eight foot, floor-to-ceiling hole in the Hawkinses' bedroom wall. That night, DMC offered to host the Hawkinses in a hotel room, but the Hawkinses declined because they did not feel that their belongings would be secure. The next day, DMC secured the apartment wall by screwing pieces of plywood over most of the opening, although several inches at the bottom remained exposed. The Hawkinses informed DMC about the void and offered to fix the hole, but DMC told them not to fix the hole because DMC would make the repairs. The Hawkinses relied on these representations.

¶3 The plywood covering remained the only repair to the Hawkinses' apartment until July 2006. The Hawkinses remained in the apartment and continued to pay rent because they could not afford to move into another unit. On June 10, 2006, the Hawkinses sent an e-mail to DMC asking it to fix the wall, with no response. On June 15, they hired an attorney, who sent a formal letter to DMC asking it to fix the hole. After a second letter, DMC responded by denying responsibility for the repairs. But in July 2006,

DMC began and finished the repairs, which took approximately one week.

¶4 In December 2006, the Hawkinses filed suit in district court against DMC and the Diels, alleging (1) negligent infliction of emotional distress; (2) negligent violation of landlord duties under common law; (3) violation of the Washington Residential Landlord-Tenant Act of 1973, chapter 59.18 RCW; and (4) breach of contract. The Diels admitted liability and reserved the issue of damages for trial.[1]

¶5 In June 2008, the district court held a jury trial on the Hawkinses' claims. The Hawkinses brought a motion in limine to exclude all evidence of insurance. DMC opposed the motion, arguing that the district court should allow it to present evidence of insurance to establish that the Diels' insurance adjuster delayed the repairs. DMC maintained that the Diels' liability insurance evidence was relevant as to whether the Diels, by virtue of their insurance carrier, caused all or a portion of the delay. The district court excluded all mention of insurance but allowed DMC to present other evidence of delay, such as difficulty in obtaining bids.

¶6 At the close of the Hawkinses' case, DMC moved to dismiss the Hawkinses' negligence claims under common law and residential landlord-tenant law, arguing that the Hawkinses failed to prove general damages and failed to mitigate. Over the Hawkinses' opposition, the district court granted DMC's motion and later denied the Hawkinses' motion for reconsideration.

¶7 The jury found that DMC breached its contract with the Hawkinses and caused damages to the Hawkinses in reduced rental value. The district court awarded the Hawkinses damage against DMC in the amount of $2,356.00. The jury also awarded the Hawkinses $4,789.20 against the Diels for economic damages, reduced rental

---

[1] The Diels are not parties to this appeal.

value, and property damages. Determining that the Hawkinses had prevailed on the contract issue, the district court ordered DMC to pay the Hawkinses $20,000.00 in attorney fees, a reasonable amount that represented only the work done to prevail on the contract issue.

¶8 The Hawkinses appealed to superior court, arguing that the district court erred when it dismissed their claims for common law negligence and negligent violation of residential landlord-tenant laws. DMC cross appealed, arguing that the district court erred when it (1) excluded evidence of conversations between DMC and the Diels' insurance company that caused delays to the repair of the Hawkinses' apartment and (2) awarded attorney fees to the Hawkinses. The superior court reversed the district court and remanded for a new trial.

¶9 The Hawkinses appeal the superior court's reversal and ask this court to affirm the district court's decision to (1) exclude references to Diel's insurance company and (2) award attorney fees. DMC cross appeals the superior court's reversal and asks this court to affirm the district court's decision to dismiss the Hawkinses' negligence claims for general damages.

## ANALYSIS

### I. The Hawkinses' Appeal

### A. Liability Insurance

¶10 The Hawkinses first argue that the district court correctly excluded evidence of liability insurance. We agree.

¶11 ER 411 generally prohibits the introduction of evidence that a person did or did not possess liability insurance as proof that the person acted negligently or otherwise wrongfully. *See, e.g., Goodwin v. Bacon*, 127 Wn.2d 50, 55, 896 P.2d 673 (1995) (noting that in general, evidence regarding availability of insurance is inadmissible on the

issue of negligence under ER 411); *Todd v. Harr, Inc.*, 69 Wn.2d 166, 168, 417 P.2d 945 (1966) (holding that whether or not a personal injury defendant carries liability insurance is immaterial); *Kappelman v. Lutz*, 141 Wn. App. 580, 590, 170 P.3d 1189 (2007) ("[T]he fact that a defendant in a personal injury case carries liability insurance is not material to the questions of negligence and damages."), *aff'd*, 167 Wn.2d 1, 217 P.3d 286 (2009); *Lopez-Stayer v. Pitts*, 122 Wn. App. 45, 51 n.5, 93 P.3d 904 (2004) ("ER 411 restricts evidence of a defendant's insurance coverage or the lack of such coverage as proof of negligence or other wrongdoing."). A party may introduce evidence of another's liability insurance, however, when such evidence is offered to prove matters other than the party's wrongdoing, including proof of agency, ownership, or control; or bias or prejudice of a witness; or to rebut an element of a claim. *Goodwin*, 127 Wn.2d at 55 (citing *Kubista v. Romaine*, 87 Wn.2d 62, 69, 549 P.2d 491 (1976)); ER 411.

¶12 DMC argues that this case is like *Kubista*, in which our Supreme Court found evidence of liability insurance admissible. In *Kubista*, the plaintiff, a shipfitter, suffered back injuries and had to find another occupation due to the defendant's negligence. *Kubista*, 87 Wn.2d at 62-63. The defendant's insurance adjuster encouraged the plaintiff to go to school to learn a new trade, promising that the insurance company would " 'take care of him.' " *Kubista*, 87 Wn.2d at 63. The plaintiff later filed suit against the defendant, alleging general damages that included reduced earning capacity and lost wages. *Kubista*, 87 Wn.2d at 63. The defendant moved to exclude testimony concerning the insurance adjuster's statement to the plaintiff, and the plaintiff responded that such evidence was necessary in order to rebut the defendant's anticipated claim of failure to mitigate. *Kubista*, 87 Wn.2d at 64. The trial court excluded the insurance testimony as irrelevant, and in closing remarks to the jury, the defendant argued that it was not responsible for the plaintiff's decision to go to school rather

than seek employment. *Kubista*, 87 Wn.2d at 65, 67. Our Supreme Court reversed the trial court's decision, holding that "[t]his evidence on its face is relevant to show defendant was estopped to assert the defense that plaintiff's failure to seek employment violated his duty to mitigate damages." *Kubista*, 87 Wn.2d at 67.

¶13 *Kubista* is distinguishable. In *Kubista*, the plaintiff sought to introduce evidence of insurance that was directly relevant to estop the defendant from asserting its defense. *Kubista*, 87 Wn.2d at 67. Here, DMC attempts to point to the Diels' insurance carrier's delay to avoid its own contractual responsibility. This evidence is simply not relevant to the duty DMC owed to the Hawkinses. The Diels admitted liability; accordingly, DMC has recourse to recover from them in a separate action. Evidence of the Diels' liability insurance had no relevance to any issue in dispute between the Hawkinses and DMC.

¶14 Additionally, the district court's ruling to exclude evidence of the liability insurance did not affect DMC's ability to argue that their delay in making the repairs was reasonable. Neither did the district court's ruling preclude DMC from introducing evidence of its efforts to procure damage estimates and repair bids. In this case, the prejudicial effect of evidence of liability insurance outweighs any relevance. The district court properly exercised its discretion and did not err in excluding evidence of liability insurance. We reverse the superior court's order on this issue.

### B. Attorney Fees

¶15 The Hawkinses next contend that the district court properly awarded attorney fees. Again, we agree.

¶16 We award attorney fees only if authorized by a contract, statute, or recognized ground in equity. *Bowles v. Dep't of Ret. Sys.*, 121 Wn.2d 52, 70, 847 P.2d 440 (1993). We review de novo a trial court's decision that a particular

contract, statute, or recognized ground in equity authorizes an attorney fee award. *Tradewell Grp., Inc. v. Mavis*, 71 Wn. App. 120, 126, 857 P.2d 1053 (1993). The lease here allowed for attorney fees, which applies to the Hawkinses through RCW 4.84.330. *See Wachovia SBA Lending, Inc. v. Kraft*, 165 Wn.2d 481, 489, 200 P.3d 683 (2009) ("By its plain language, the purpose of RCW 4.84.330 is to make unilateral contract provisions bilateral.").

▆ ▆ ¶17 An award of attorney fees under RCW 4.84.330 is mandatory, with no discretion except as to the amount. *Singleton v. Frost*, 108 Wn.2d 723, 729, 742 P.2d 1224 (1987); *Kofmehl v. Steelman*, 80 Wn. App. 279, 286, 908 P.2d 391 (1996). Whether a party is a "prevailing party" is a mixed question of law and fact that we review under an error of law standard. *Eagle Point Condo. Owners Ass'n v. Coy*, 102 Wn. App. 697, 706, 9 P.3d 898 (2000).

▆ ¶18 Under RCW 4.84.330, "prevailing party" means the party in whose favor the court rendered final judgment. *Riss v. Angel*, 131 Wn.2d 612, 633, 934 P.2d 669 (1997); *Marassi v. Lau*, 71 Wn. App. 912, 859 P.2d 605 (1993), *abrogated on other grounds by Wachovia*, 165 Wn.2d 481. A defendant who successfully defends may be a prevailing party. *Marine Enters., Inc. v. Sec. Pac. Trading Corp.*, 50 Wn. App. 768, 772, 750 P.2d 1290, *review denied*, 111 Wn.2d 1013 (1988). If neither party wholly prevails, then the party that substantially prevails on its claims is the prevailing party. *Transpac Dev., Inc. v. Young Suk Oh*, 132 Wn. App. 212, 217-19, 130 P.3d 892 (2006). The substantially prevailing party need not prevail on his or her entire claim. *See Silverdale Hotel Assocs. v. Lomas & Nettleton Co.*, 36 Wn. App. 762, 774, 677 P.2d 773, *review denied*, 101 Wn.2d 1021 (1984). When both parties prevail on a major issue, there may be no prevailing party for attorney fee purposes. *Phillips Bldg. Co. v. An*, 81 Wn. App. 696, 702, 915 P.2d 1146 (1996).

¶19 Here, the Hawkinses recovered on their contract claim, but the district court dismissed their general dam-

ages claim. The Hawkinses contend that they prevailed on the only claim under which RCW 4.84.330 authorizes attorney fees. DMC counters that because it successfully defended the Hawkinses' general damages claim, the Hawkinses cannot be said to be the substantially prevailing party. DMC relies on *Hertz v. Riebe*, 86 Wn. App. 102, 936 P.2d 24 (1997), for its proposition that courts must look at the outcome of all the claims in the lawsuit, regardless of whether RCW 4.84.330 authorizes attorney fees for the claim.

¶20 In *Hertz*, the Hertzes agreed to buy an apartment complex from the Riebes and signed an earnest money agreement that gave the Riebes $1,000 earnest money. *Hertz*, 86 Wn. App. at 104. The earnest money agreement provided for attorney fees to the prevailing party based on the agreement. *Hertz*, 86 Wn. App. at 104. The Hertzes refused to purchase the property, alleging that the Riebes misrepresented material facts. *Hertz*, 86 Wn. App. at 104. The Hertzes filed action to recover their earnest money, and the Reibes filed a separate action to recover lost rent. *Hertz*, 86 Wn. App. at 104. The cases were consolidated, and the superior court found that the Hertzes were entitled to their earnest money and that the Riebes were entitled to reasonable rent money. *Hertz*, 86 Wn. App. at 104-05.

¶21 On appeal to Division Three of this court, the Hertzes argued that because the basis for their claim—the earnest money agreement—provided for attorney fees and because the basis for the Riebes' counterclaim—unpaid rent and expenses—did not provide for such fees, they were the "prevailing party" and should be entitled to fees. *Hertz*, 86 Wn. App. at 105. Division Three rejected this argument, reasoning:

> The statute does not define the prevailing party as one who prevailed on a claim which authorized attorney fees. The statute focuses rather on the relief afforded to the parties for the entire suit whether or not the underlying claim provides for fees. *See generally Rowe v. Floyd*, 29 Wn. App. 532, 535 n.4, 629

P.2d 925 (1981). After consolidation, both the Hertzes' claim and the Riebes' claim were part and parcel of the same suit. CR 42(a). Both parties prevailed on their respective claims and thus neither is a "prevailing party."

*Hertz*, 86 Wn. App. at 105. In addition, the *Hertz* court concluded that the proportionality approach in *Marassi* was not applicable because "each party recovered on a substantial theory." *Hertz*, 86 Wn. App. at 106.

¶22 *Hertz* is distinguishable from this case because both Hertz and Riebes filed separate lawsuits and because both received affirmative relief on their legal theories. *Hertz*, 86 Wn. App. at 104-05. The *Hertz* court did not find persuasive that the basis of the Hertzes' claim (the earnest money agreement) provided for attorney fees and the basis of the Riebes' claim did not. Instead, the court understood that the Hertzes' and the Riebes' suits were "part and parcel . . . the same" after consolidation. *Hertz*, 86 Wn. App. at 105. In that consolidated suit, both the Hertzes and the Riebes recovered on their claim and, thus, neither could be said to have been a "prevailing party." *Hertz*, 86 Wn. App. at 105. Here, the court afforded affirmative relief, in the form of judgments against both Diel and DMC, only to the Hawkinses. DMC did not file a counter suit against the Hawkinses; DMC merely asserts that it defended a successful portion of the Hawkinses' suit. But DMC successfully defending a portion of the Hawkinses' suit does not make them a prevailing party. We do not read *Hertz* as precluding a party with a valid RCW 4.84.330 claim for attorney fees from recovering those fees when the other party does not obtain affirmative relief.

¶23 Here, the Hawkinses prevailed on their breach of contract claim, which entitles them to attorney fees under RCW 4.84.330. We reject DMC's argument that they, too, are somehow a prevailing party under *Hertz*. In the whole of the litigation, the court awarded affirmative relief only to the Hawkinses. Thus, the Hawkinses are the only prevailing party and the district court did not err in awarding

them attorney fees for the portion of attorney work to prevail on their contract claim.[2]

## II. DMC's Cross Appeal

¶24 In its cross appeal, DMC argues that the district court properly dismissed the Hawkinses' negligent infliction of emotional distress claim that it brought to recover general damages. We agree.

¶25 DMC successfully moved to dismiss the Hawkinses' negligence claims under CR 50(a)(1). We review a trial court's ruling under CR 50(a)(1) de novo, applying the same standard as that applied by the trial court. *Davis v. Microsoft Corp.*, 149 Wn.2d 521, 530-31, 70 P.3d 126 (2003). "Granting a motion for judgment as a matter of law is appropriate when, viewing the evidence most favorable to the nonmoving party, the court can say, as a matter of law, there is no substantial evidence or reasonable inference to sustain a verdict for the nonmoving party." *Sing v. John L. Scott, Inc.*, 134 Wn.2d 24, 29, 948 P.2d 816 (1997). "Substantial evidence" is evidence sufficient to persuade a fair-minded, rational person that the premise is true. *Wenatchee Sportsmen Ass'n v. Chelan County*, 141 Wn.2d 169, 176, 4 P.3d 123 (2000).

¶26 The core of Hawkinses' action is a breach of contract claim. They contend that DMC breached its duty, implied in law or explicit in the lease, to repair and maintain a habitable premise. The question is whether the Hawkinses can recover general damages from DMC under a theory of negligent infliction of emotional distress.[3] "A plaintiff who

---

[2] In their reply brief, the Hawkinses also request attorney fees for this appeal. But we decline to award attorney fees for this appeal because the Hawkinses failed to raise the issue in their opening brief, as RAP 18.1 requires. Argument and authority raised for the first time in a reply brief comes too late. *King v. Rice*, 146 Wn. App. 662, 673, 191 P.3d 946 (2008), *review denied*, 165 Wn.2d 1049 (2009). The Hawkinses are entitled to attorney fees only for their work done at district court.

[3] The Hawkinses also assert that landlord-tenant common law entitles them to relief in the form of general damages, but they have cited no authority in which a

suffers mental distress without physical injury may have a cause of action." *Pickford v. Masion*, 124 Wn. App. 257, 259, 98 P.3d 1232 (2004) (citing *Hunsley v. Giard*, 87 Wn.2d 424, 435, 553 P.2d 1096 (1976)). " 'It is not necessary that there be any physical impact or the threat of an immediate physical invasion of the plaintiff's personal security.' " *Pickford*, 124 Wn. App. at 259-60 (quoting *Hunsley*, 87 Wn.2d at 435). "And there is no 'absolute boundary around the class of persons whose peril may stimulate the mental distress.' " *Pickford*, 124 Wn. App. at 260 (quoting *Hunsley*, 87 Wn.2d at 436). "Rather, '[t]his usually will be a jury question bearing on the reasonable reaction to the event unless the court can conclude as a matter of law that the reaction was unreasonable.' " *Pickford*, 124 Wn. App. at 260 (alteration in original) (quoting *Hunsley*, 87 Wn.2d at 436).

¶27 The Hawkinses argue that DMC owed them common law duties to maintain a habitable premises, that it breached those duties by failing to fix a hole in their apartment wall, and that the breach caused them to suffer severe emotional distress. We hold that their reaction was unreasonable as a matter of law.

¶28 The Hawkinses cannot maintain an actionable claim for emotional distress because they did not prove a diagnosable emotional disorder. "In order to recover for negligent infliction of emotional distress, a plaintiff's emotional response must be reasonable under the circumstances, and be corroborated by objective symptomatology." *Hegel v. McMahon*, 136 Wn.2d 122, 132, 960 P.2d 424 (1998). To satisfy objective symptomatology, "a plaintiff's emotional distress must be susceptible to medical diagnosis and proved through medical evidence." *Hegel*, 136 Wn.2d at 135. Here, the Hawkinses alleged only emotional distress in the broadest sense and, importantly, failed to support any of their assertions with substantiated medical evidence.

¶29 The Hawkinses nonetheless argue that under *Price v. State*, 114 Wn. App. 65, 73, 57 P.3d 639 (2002),

---

Washington court has granted such relief in situations analogous to the facts here.

they need not prove objective symptomatology where they have a preexisting relationship with the defendant. They are not persuasive. *Price* synthesized decades of the law surrounding negligent infliction of emotional distress and formulated helpful rules, including the following: If the relationship between the parties was more than merely economic, and a reasonable person standing in the defendant's shoes would easily foresee that breach of its duty to the plaintiff is likely to cause significant emotional distress, damages need not be supported by proof of physical impact or objective symptomatology. *Price*, 114 Wn. App. at 73.

¶30 We hold that *Price* does not relieve the Hawkinses from proving objective symptomatology because the Hawkinses cannot show that a reasonable person in DMC's shoes would easily foresee that a breach of its duty to repair would likely cause its tenants significant emotional distress. *Price*, 114 Wn. App. at 73. In this situation, if the landlord takes excessive time to repair damage, the tenant may move out without further liability under the lease. RCW 59.18.090. A tenant may also recover diminution in rental value due to the defective condition, which the Hawkinses successfully did here. RCW 59.18.110. But a landlord cannot reasonably foresee that merely an unsuccessful effort to repair will cause the tenant to suffer severe emotional distress.

¶31 The Hawkinses did not allege any actionable negligence claims. Thus, the district court did not err by dismissing their request for general damages.

¶32 We reverse the superior court; we affirm the district court.

PENOYAR, C.J., and VAN DEREN, J., concur.