# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| JAMES SWAIN, individually, | ) | DIVISION ONE |
| | ) | |
| Appellant, | ) | No. 73636-1-I |
| | ) | |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| SUREWAY, INC., a Washington corporation, | ) | |
| | ) | |
| Respondent. | ) | FILED: November 2, 2015 |
| | ) | |

2015 NOV -2 AM 9: 46

DWYER, J. — Following a de novo jury trial after a mandatory arbitration proceeding, a judgment was entered on James Swain's claim of negligent auto repair against Sureway, Inc., arising out of repairs performed by Sureway on Swain's vehicle. Swain appeals, contending that the trial court erred in denying his motion for a mistrial after a witness for Sureway twice referenced the previous arbitration proceeding in violation of Mandatory Arbitration Rule (MAR) 7.2. He also contends that the trial court erred in granting Sureway's motion to dismiss his claims relating to the Automotive Repair Act (ARA), ch. 46.71 RCW, and the Consumer Protection Act (CPA), ch. 19.86 RCW, brought at the conclusion of the plaintiff's case-in-chief.[1] Because Swain does not establish an entitlement to relief on any of his claims, we affirm.

---

[1] The trial court also dismissed Swain's fraud and intentional misrepresentation causes of action. No error is assigned to those rulings.

I

The contact between Swain and Sureway, Inc. arose after Swain's vehicle was damaged in a collision caused by a third party on December 13, 2006.[2] The third party was at fault for the collision. The third party's insurer, United Services Automobile Association (USAA), agreed to pay for the cost of repairs.

Because Swain was unable to drive his car away from the scene of the collision, he had the vehicle towed to an impound lot, then to the dealership where he purchased the car. The dealership sent vehicles to Sureway for collision repair.

On December 16, 2006, Sureway prepared a preliminary estimate for the cost of repairs that totaled $12,636.09.[3] A USAA adjuster then performed an evaluation of the damage to Swain's vehicle. Based on this evaluation, the adjuster prepared, on behalf of USAA, an estimate for the cost of repairs in the amount of $9,919.84. On December 26, 2006, the insurance adjuster brought USAA's estimate to Sureway and left his business card with the repair shop. That same day, USAA issued a "two-party check" made payable to both Swain and Sureway, in the amount of USAA's estimate. Sureway then prepared a

---

[2] The third party who caused the initial collision is not a party to this appeal.

[3] On appeal, we can ascertain the timeline of events as to the estimates exchanged between Sureway and USAA from Swain's opening statement to the jury and from Sureway's trial brief. Robert Merritt, the owner of Sureway, testified at trial that the estimates were prepared a "long time ago."

Further, Merritt testified that the dates on the documents detailing the estimates for repair are the dates when the documents were printed, which was not necessarily the same date that the document was prepared.

Although an attorney's statement in opening statement or in a trial brief does not constitute evidence, neither party appears to dispute the order of events (although the parties do disagree as to the legal significance of events).

"repair order" that included a section at the bottom of the form for customers to provide signature authorization to complete repairs.

A representative of USAA notified Swain that a check was in the mail for the cost of the repairs. The representative also instructed Swain that he needed to take the check to Sureway and sign it over to Sureway to pay for the repairs.

On January 4, 2007, Swain took the check to Sureway. Swain testified that, while at the repair shop, he expressed concern regarding the cost of the repairs.[4] Despite any concern, Swain signed a written authorization for Sureway to proceed with the repairs and signed over the USAA check to Sureway to pay for the repairs.

Sureway repaired the vehicle. The repairs performed by Sureway consisted of replacing the "steering knuckle." The caliper is attached to the steering knuckle, so this repair also required Sureway to remove and replace the caliper. Because Sureway performed "mostly suspension" work, it outsourced other repairs of the vehicle.

On February 14, 2007, Swain picked up the repaired vehicle from Sureway. Swain did not conduct a full inspection prior to leaving the shop with the repaired vehicle.

Two days later, Swain was driving his car when the front end of the vehicle "locked up." The car bounced "four to five times" before coming to a stop near a cement wall.

---

[4] A review of Sureway's repair order indicates that when Swain was given an opportunity to express his concern in writing in an area labeled "customer concern" on the form, his concern was limited to "Engels tow bills--$262.72, Herbs tow bill--$45.00."

Swain had the vehicle towed to Stroud's Auto Rebuild where Darrell "Mike" Harber inspected it. After Harber walked around the vehicle, he recommended to Swain that the vehicle be "disassemble[d]." On March 30, 2007, Harber received an authorization from Swain to proceed with disassembling his vehicle.

In examining the vehicle, Harber discovered that a "bolt [had] come loose from the caliper," and "the caliper moved in location and jammed up in the wheel."[5]

In 2007, Swain filed a lawsuit against Sureway alleging negligent auto repair. He later dismissed the suit. In 2010, Swain filed a second lawsuit against Sureway alleging negligent auto repair, violations of the ARA and CPA, fraud, intentional misrepresentation, and fraudulent omissions. The case was transferred to mandatory arbitration. The arbitrator ruled in favor of Sureway. Swain requested a trial de novo before a jury. The trial de novo was held from May 28, 2014 through June 5, 2014. At trial, the jury heard testimony from Sureway owner Robert Merritt, Harber, and Swain.

On June 2, at the close of Swain's case-in-chief, Sureway moved for judgment as a matter of law as to all of Swain's claims. The trial court heard arguments from both sides before granting Sureway's motion to dismiss the claims based on violation of the ARA, CPA, fraud, and intentional misrepresentation. The trial court denied Sureway's motion to dismiss Swain's claim for negligent auto repair.

---

[5] The testimony does not indicate which front wheel locked up.

- 4 -

The trial continued. During cross-examination, Merritt twice referenced the prior arbitration proceeding. Merritt's references to the prior arbitration proceeding were as follows.

QUESTION [Plaintiff's counsel, Ms. Bullis]: Now, your attorney asked you if you were notified of any repair issues to Mr. Swain's vehicle before suit was filed. Do you recall that?

ANSWER: If I was notified?

QUESTION: Yeah. If you were informed that there were any problems with Mr. Swain's car?

ANSWER: I'm not remembering, no. It's been awhile.

QUESTION: If I give you a document to refresh your memory, would that be helpful?

ANSWER: Yes.

MS. BULLIS: I am going to hand Mr. Merritt his deposition testimony.

MS. BULLIS: I am going to Page 53 and 54. I am going to Line Item No. 15. On that beginning -- do you see where I ask you –

MS. SMETKA [Defense counsel]: Your Honor, I would object – she has not properly published the deposition. She is not using the proper means of inquiring or using it to refresh his recollection. I'm not sure what she is doing.

THE COURT: Why don't you inquire whether his memory is refreshed on this issue having read this document.

MS. BULLIS: Did you read it?

ANSWER: Just so I understand it, this is a deposition? So this would have been the first time that I was called in to give testimony? Is this an -- was this our arbitration? Was -- is this something different?

Later, the following exchange took place.

MS. BULLIS: Do you recall a time when the first lawsuit was dismissed against Sureway?

ANSWER: It's always been a little confusing for me. All right.

MS. BULLIS: Me too.

ANSWER: It's taken quite a few years to quite get a grasp or get my head around the whole thing. But – I'm not that good with the legal process, so I am going to have to say I am not qualified to answer that.

QUESTION: If I said the lawsuit was dismissed -- the first lawsuit was dismissed in December 2009, would you disagree with that?

MS. SMETKA: Objection. Speculation.

THE COURT: Overruled. You may answer if you are able.

THE WITNESS: Well, my mind's wanting to know what was dismissed. What was on the table? I do remember that there was a lawsuit dismissed. When, where, the terms, I don't know that.

MS. BULLIS: And you do recall that there was a second lawsuit filed against Sureway two months later; is that right?

ANSWER: Yeah. Yeah.

QUESTION: And that lawsuit, without going into the claims, contained additional claims; is that right?

ANSWER: Okay. That's where it gets confusing. And then again, what you are calling a lawsuit, okay, I just remember a deposition and an arbitration.

Swain moved for a mistrial based on a violation of MAR 7.2.[6] The trial court denied Swain's motion. Swain did not seek any other form of relief.

---

[6] The text of MAR 7.2(b)(1) and MAR 7.2(b)(2) provide:

The trial de novo shall be conducted as though no arbitration proceeding had occurred. No reference shall be made to the arbitration award, in any pleading, brief, or other written or oral statement to the trial court or jury either before or

At the conclusion of the evidence, the claim for negligent auto repair was submitted to the jury. The jury returned a verdict in favor of Swain in the amount of $1,080.72. The trial court entered judgment in a lesser amount, reasoning that because Sureway made an offer of judgment in 2010 in the amount of $18,649.98, which was not accepted by Swain, Sureway was the prevailing party for purposes of an award of costs. Thus, the trial court entered judgment in favor of Swain for $880.72, to reflect a $200 offset for Sureway's statutory attorney fee.

Swain appeals.

## II

Swain first contends that "the trial court erred as a matter of law on a trial de novo when it denied [his] motion for a mistrial." This is so, he asserts, "because the trial court failed to give effect to the plain language of the mandatory arbitration rules" that "clear[ly] and unambiguous[ly]" state that no reference shall be made during a de novo trial to an earlier arbitration proceeding. While we agree with Swain that no reference is to be made to an earlier arbitration, the texts of MAR 7.2(b)(1) and 7.2(b)(2) do not establish a sole or mandatory remedy in case of violation. Swain's contention to the contrary is

---

during the trial, nor, in a jury trial, shall the jury be informed that there has been an arbitration proceeding.

MAR 7.2(b)(1)

Testimony given during the arbitration proceeding is admissible in subsequent proceedings to the extent allowed by the Rules of Evidence, except that the testimony shall not be identified as having been given in an arbitration proceeding.

MAR 7.2(b)(2)

-7-

incorrect.

The law is clear. A trial court's decision to grant or deny a motion for a mistrial is reviewed for abuse of discretion. Adkins v. Aluminum Co. of Am., 110 Wn.2d 128, 137, 750 P.2d 1257, 756 P.2d 142 (1988); accord Rich v. Starczewski, 29 Wn. App. 244, 247, 628 P.2d 831 (1981) (citing Church v. West, 75 Wn.2d 502, 452 P.2d 265 (1969); Todd v. Harr, Inc., 69 Wn.2d 166, 417 P.2d 945 (1966)). Indeed,

> [t]rial courts have broad discretionary powers in conducting a trial and dealing with irregularities that arise. They should grant a mistrial only when nothing the court can say or do would remedy the harm caused by the irregularity or, in other words, when the harmed party has been so prejudiced that only a new trial can remedy the error.

Kimball v. Otis Elevator Co., 89 Wn. App. 169, 178, 947 P.2d 1275 (1997). "In determining the effect of an irregularity, a reviewing court considers whether (1) it was serious, (2) it involved cumulative evidence, and (3) the trial court properly instructed the jury to disregard it." Kimball, 89 Wn. App. at 178.

The relevant court rules provide:

> The trial de novo shall be conducted as though no arbitration proceeding had occurred. No reference shall be made to the arbitration award, in any pleading, brief, or other written or oral statement to the trial court or jury either before or during the trial, nor, in a jury trial, shall the jury be informed that there has been an arbitration proceeding.

MAR 7.2(b)(1).

> Testimony given during the arbitration proceeding is admissible in subsequent proceedings to the extent allowed by the Rules of Evidence, except that the testimony shall not be identified as having been given in an arbitration proceeding.

MAR 7.2(b)(2).

The parties agree that a trial irregularity occurred: a witness for Sureway twice mentioned the prior arbitration proceeding. The plain language of the rules state that such references shall not be made. MAR 7.2(b)(1); MAR 7.2(b)(2). However, the text of the rules do not establish any sole, or mandatory, remedy in case of violation.

Indeed, a survey of relevant case law demonstrates that the trial court acted properly in its denial of the mistrial motion. For instance, in Rich v. Starczewski, 29 Wn. App. 244, we addressed a similar issue. Francis Starczewski appealed a judgment entered against him arising from injuries sustained by Lydia Rich when a van driven by Starczewski collided with Rich's bicycle. Starczewski, 29 Wn. App. at 245. We examined whether "the trial judge erred in denying a defense motion for a mistrial after a police officer investigating the accident was asked by Rich's counsel whether he issued a citation at the scene and the officer responded affirmatively." Starczewski, 29 Wn. App. at 246.

In answering this question, we accorded great deference to the trial judge, stating, "[t]he determination of when a mistrial should be ordered because improper evidence is inadvertently mentioned is a matter within the sound discretion of the trial judge." Starczewski, 29 Wn. App at 247 (citing Church, 75 Wn.2d 502; Todd, 69 Wn.2d 166)). Moreover, we observed that, "[t]he trial judge's presence in the courtroom enables him to best determine the effect, if any, of such statements on the jury and if the statements were sufficient to deny the appellant a fair trial." Starczewski, 29 Wn. App. at 247 (citing Church, 75 Wn.

- 9 -

2d 502)). In finding no error, we were persuaded that "[t]he impact of such statements in light of other evidence in the case is a proper consideration in determining whether a fair trial is still possible." Starczewski, 29 Wn. App. at 247.

The record herein indicates that, as in Starczewski, the trial judge carefully considered the severity of the references to arbitration, whether the references involved cumulative evidence, and the potential prejudice, if any, to Swain. In ruling on the motion, the court stated:

> THE COURT: Is my memory accurate in thinking that the reference to arbitration from Mr. Merritt occurred only during your cross-examination?
>
> MS. BULLIS: That is the Court's recollection, but the rule does not limit it to cross-examination. It just says no testimony shall be used.
>
> THE COURT: I understand. The motion is denied. It appeared to me that Mr. Merritt was confused about previous proceedings, that is to say a lawsuit versus an arbitration, what claims were filed and when, what claim or claims were dismissed and when, whether his deposition pertained to an arbitration proceeding or to a lawsuit.
>
> My observation was that he was confused. And his comment regarding an arbitration was in the context of expressing his confusion. He was confused by the questions posed by [Swain's] counsel during cross-examination. So in the Court's view, the statement about an arbitration was not intended in any way, shape, or form by [Sureway] to deliberately introduce the subject of an arbitration in front of a jury in an effort to poison this trial in any way. I am confident it was inadvertent. I am confident that there is little, if any, prejudice to [Swain's] case.
>
> I believe that if there is any prejudice to the introduction of testimony about previous proceedings, that there would be more prejudice to [Swain's] case for the jury to know, as they have been told through counsel -- through [Swain's] counsel's questioning that

there was a lawsuit once filed and then subsequently dismissed to the extent that there is any prejudice to [Swain's] case from that. And I don't think there would be much prejudice. I think that is a greater level of prejudice than the mention of an arbitration.

In any event, I see this as elicited by [Swain's] counsel, and, again, inadvertently mentioned by Mr. Merritt. I do not see this as the sort of problem or error that would require a mistrial to be ordered. I am declining to order that.

It is apparent that the trial judge herein was not of the belief that "nothing the court can say or do would remedy the harm caused by the irregularity," or that "the harmed party has been so prejudiced that only a new trial can remedy the error." Kimball, 89 Wn. App. at 178. Thus, the trial court properly exercised its discretion in declining to order a mistrial.

Nevertheless, Swain insisted at trial (and persists in asserting on appeal) that the *sole* and *mandatory* remedy for a violation of MAR 7.2 is a mistrial. Swain is wrong on the law and the trial court recognized this.

THE COURT: Does the rule say that if the word "arbitration" comes up in front of a jury that the Court shall declare a mistrial? It doesn't say that, counsel. And the Court has considered all the circumstances here. I have made a record of what my observations were, so that if an appellate court reviews this trial record, they will have the benefit of this judge's observations of what occurred. In the exercise of my discretion, I am denying the motion for a mistrial.

Neither MAR 7.2(b)(1) nor MAR 7.2(b)(2) require the grant of a mistrial to be the sole and mandatory remedy in case of violation. Swain could not be more wrong when he contends to the contrary. Moreover, the trial judge's ruling on the motion was appropriately based on the law as it actually exists. Because the trial court properly exercised its discretion, there was no error.

III

Swain next contends that the trial court erred in granting Sureway's motion to dismiss his claim pursuant to the ARA. This is so, he asserts, because Sureway did not provide him with a written estimate or obtain his oral authorization before beginning repairs and charged him for unnecessary repairs to his vehicle. We disagree.

"We review a trial court's ruling under CR 50(a)(1) de novo, applying the same standard as that applied by the trial court." Hawkins v. Diel, 166 Wn. App. 1, 13, 269 P.3d 1049 (2011). "'Granting a motion for judgment as a matter of law is appropriate when, viewing the evidence most favorable to the nonmoving party, the court can say, as a matter of law, there is no substantial evidence or reasonable inference to sustain a verdict for the nonmoving party.'" Guijosa v. Wal-Mart Stores, Inc., 144 Wn.2d 907, 915, 32 P.3d 250 (2001) (quoting Sing v. John L. Scott, Inc., 134 Wn.2d 24, 29, 948 P.2d 816 (1997)). "'Substantial evidence' is evidence sufficient to persuade a fair-minded, rational person that the premise is true." Hawkins, 166 Wn. App. at 13 (quoting Wenatchee v. Sportsmen Ass'n v. Chelan County, 141 Wn.2d 169, 176, 4 P.3d 123 (2000)).

The relevant court rule provides that a motion for judgment as a matter of law may be granted:

> If, during a trial by jury, a party has been fully heard with respect to an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find or have found for that party with respect to that issue, the court may grant a motion for judgment as a matter of law against the party on any claim, counterclaim, cross claim, or third party claim that cannot under the controlling law be maintained without a favorable finding on that issue.

CR 50 (a)(1).

"The Automotive Repair Act is a consumer protection statute designed to foster fair dealing and to eliminate misunderstandings in a trade replete with frequent instances of unscrupulous conduct." Bill McCurley Chevrolet, Inc. v. Rutz, 61 Wn. App. 53, 55, 808 P.2d 1167 (1991). "As a remedial statute, the ARA is to be liberally construed to further this legislative purpose." State v. Pike, 118 Wn.2d 585, 591, 826 P.2d 152 (1992). "In particular, full effect must be given to the plain language of the ARA 'even where the results sometimes seem harsh to the mechanic's interests.'" Campbell v. Seattle Engine Rebuilders & Remanufacturing, Inc., 75 Wn. App. 89, 93, 876 P.2d 948 (1994) (quoting Pike, 118 Wn.2d at 591)).

The relevant provisions of the ARA that Swain alleged Sureway violated provide, in pertinent part, as follows:

> [A] repair facility prior to providing parts or labor shall provide the customer or the customer's designee with a written price estimate of the total cost of the repair, including parts and labor, or where collision repair is involved, aftermarket body parts or nonoriginal equipment manufacturer body parts, if applicable.

RCW 46.71.025(1).

> A written estimate shall not be required when the customer's motor vehicle or component has been brought to an automotive repair facility's regular place of business without face-to-face contact between the customer and the repair facility. Face-to-face contact means actual in-person discussion between the customer or his or her designee and the agent or employee of the automotive repair facility authorized to intake vehicles or components. However, prior to providing parts and labor, the repair facility must obtain either the oral or written authorization of the customer *or the customer's designee.* The repair facility or its representative shall note on the

- 13 -

estimate or repair order the date and time of obtaining an oral authorization, the total amount authorized, the name or identification number of the employee who obtains the authorization, and the name of the person authorizing the repairs.

RCW 46.71.025(3) (emphasis added).

The problem with Swain's contention that Sureway failed to comply with these provisions of the ARA is that Swain does not acknowledge that—through USAA's action of producing an estimate of repairs as a counter-offer to Sureway's estimate and issuing a check in that amount payable to Swain and Sureway, coupled with Swain's actions of accepting the check from USAA, signing it over to Sureway, and signing a repair order that authorized Sureway to proceed with repairs—Sureway was entitled to view USAA and Swain as being in an agency relationship. In this regard, USAA was Swain's designee pursuant to the ARA. Moreover, Swain accepted the benefit of the repaired vehicle without objection. Thus, Swain's actions gave Sureway no reason to believe that Sureway, who provided proper notice to USAA, had, in any way, violated the ARA.

Relevant authority supports this view. In Bill McCurley Chevrolet v. Rutz, 61 Wn. App. 53, Rebecca Rutz was involved in an automobile accident that damaged her car. Rutz and her insurance carrier agreed to have the car towed to McCurley Chevrolet in order to receive an estimate for the cost of repairs. A written estimate was provided to Rutz's insurer who then authorized the repairs. McCurley Chevrolet, 61 Wn. App. at 54. Rutz's father visited the shop weekly while the car was being repaired. McCurley Chevrolet, 61 Wn. App. at 54. After

the car was repaired, Rutz was not satisfied and did not pay. McCurley

Chevrolet, 61 Wn. App. at 55. McCurley Chevrolet sued Rutz for the cost of

repairs and a jury awarded McCurley Chevrolet $3,657.24. McCurley Chevrolet,

61 Wn. App. at 55. On appeal, the court addressed the question of whether the

trial court erred "by denying the Rutzes' motion to set aside the verdict . . . based

on violations of the Automotive Repair Act, RCW 46.71, and the Consumer

Protection Act, RCW 19.86?" McCurley Chevrolet, 61 Wn. App. at 54.

In answering this question, the McCurley Chevrolet court turned to

principles of agency law.

> A principal may be liable because of the apparent or
> ostensible authority of its agent. . . . Apparent authority exists when,
> although authority is not actually granted, "the principal knowingly
> permits the agent to perform certain acts, or where he holds him
> out as possessing certain authority." Taylor v. Smith, 13 Wn. App.
> 171, 177, 534 P.2d 39 (1975). . . .
>
> Even if an agent acts without the principal's authority, the principal
> may nevertheless ratify the agent's act by acting with full
> knowledge of the act, accepting the benefits of the act or
> intentionally assuming the obligation imposed without inquiry.

McCurley Chevrolet, 61 Wn. App. at 56-57. In holding that the insurer was the

apparent agent of the vehicle owner, the appellate court discussed facts very

much like those present herein.

> Here, the undisputed facts reflect Ms. Rutz and her father permitted
> the work to be undertaken without objection . . . . Additionally, Ms.
> Rutz accepted the insurance check without objecting to the written
> estimate. McCurley Chevrolet had no reason to believe Ms. Rutz
> had any objection to the estimate and, in fact, was told by her that
> she was going to endorse the check. Thus, we conclude in the
> context of the facts presented here the insurance carrier was the
> agent for Ms. Rutz as a matter of law and its acceptance of the
> written estimate complied with the act.

- 15 -

McCurley Chevrolet, 61 Wn. App. at 57. Thus, the court concluded, "the Automotive Repair Act was not violated by the failure of McCurley Chevrolet to deliver a written estimate to Ms. Rutz." McCurley Chevrolet, 61 Wn. App. at 58.

The same is true herein. Sureway provided USAA the information that was required to be given to the vehicle's owner under the Automotive Repair Act. An exchange of estimates occurred between Sureway and USAA. Sureway sent a preliminary estimate to USAA which was followed by what was essentially a counter-offer from USAA, agreeing to pay for repairs in a lesser amount than that set forth in Sureway's estimate. USAA sent Swain a check, payable to both Swain and Sureway, in the lesser amount, to pay for the repairs. Swain signed the check from USAA over to Sureway. The amount of this check matches the amount written on the repair order that was signed by Swain thereby authorizing Sureway to complete the repairs. These actions constituted compliance with the ARA.

Although Swain testified that he expressed concern to Merritt at Sureway regarding the repairs, such concern did not rise to the level of an objection. Nor did Swain's concern dissuade him from signing the repair order that authorized Sureway to proceed with the repairs. In fact, a review of the repair order that Swain signed indicates that his concern did not reference the repairs at all. Instead, the information written in a "customer concern" area on the repair order listed only two towing bills and the respective amount owed on each one.

Based on Swain's actions, it was reasonable for Sureway to conclude that it had the authority to complete the repairs through USAA's acceptance of the original estimate, production of a counter-offer estimate, and payment of the amount stated therein. Even assuming, *arguendo*, that USAA did not have the authority to act as an agent on Swain's behalf, Swain's actions of signing over the check, signing the repair order authorizing the repairs, and accepting the benefit of the repaired vehicle without objection both established USAA's apparent authority to act on Swain's behalf and constituted a ratification of USAA's and Sureway's performance.

In granting Sureway's motion to dismiss Swain's claims pursuant to the ARA, the trial judge relied on <u>McCurley Chevrolet</u>, stating:

> The Auto Repair Act violation claim, the Court is finding, as a matter of law, that USAA was Mr. Swain's agent for this transaction. Sureway's delivery of an estimate to USAA that -- the evidence shows me, as it has been produced thus far in court, that this estimate delivered to USAA was fully compliant with the ARA, therefore complying with the Automotive Repair Act. The <u>McCurley Chevrolet vs. Rutz</u> case, I think, is significant here. That's at 61 Wn. App. Page 53, a 1991 decision. It's significant to the Court, instructive to the Court because it's very close factually.
>
> In the <u>McCurley</u> case, an insurance company was given an estimate by the repair shop. They were paying for repairs. There was no objection noted by the car owner, the consumer. The car owner accepted a check from the insurance company, again, without objection to the estimate that had been provided. There it was held that in looking at those facts that the insurance company was the car owner's agent. And the company's acceptance of the estimate complied with the Automotive Repair Act.
>
> In the present case, despite Mr. Swain's strong skepticism of whether or not Sureway could repair his automobile to the same condition it was before the accident, despite that skepticism, he signed over the check. And despite the fact he had a conversation

- 17 -

that was frustrating with a USAA representative feeling like he didn't have a choice in the matter, in terms of his dealings with Sureway, he authorized these repairs. I find, as a matter of law, USAA was acting as Mr. Swain's agent or designee in this particular case. Therefore this transaction is also in compliance with RCW 46.71. 025, Subsection 3.

It seems to me that the legislature wrote this subsection with this sort of a situation in mind: where an automobile is delivered to a repair shop and there's no face-to-face contact between the car owner and the repair person. In that situation, there is no estimate required to be delivered directly to the consumer when there's this lack of face-to-face contact, so long as the work, before it's performed, is only performed after an authorization by the consumer. That is what the Court sees occurring in this particular case. Mr. Swain, in writing, authorized these repairs. And there was no need for an estimate as particularly described in the Automotive Repair Act. It did not have to be delivered directly to Mr. Swain. It was delivered to his agent.[7]

The court also correctly noted that the fact that Swain expressed concern about the repairs or the fact that the vehicle's mileage was incorrectly recorded on the repair order that Swain signed was immaterial to his authorization to complete the repairs.

Based on relevant case law as applied to the evidence herein, the trial court did not err in dismissing Swain's ARA claim.

IV

Finally, Swain contends that the trial court erred in granting Sureway's motion to dismiss his claim pursuant to the CPA. This is so, he asserts, because

---

[7] The trial judge opined that Swain's other assertion pursuant to the ARA, that unnecessary repairs were performed (RCW 46.71.045(7)), was "encompassed within and covered by the negligent repair claim in this case," but did not support the ARA claim. The court allowed the negligent repair claim to go to the jury.

The court correctly ruled that proof of a negligent repair does not constitute proof of an unnecessary repair, within the meaning of the ARA.

- 18 -

Sureway's failure to comply with the written estimate and authorization for repair requirements of the ARA constitute a per se violation of the CPA.[8] Because the trial court did not err by dismissing Swain's ARA claim, it follows that it did not err in dismissing Swain's CPA claim.[9]

Affirmed.

We concur:

---

[8] In a colloquy with the court regarding Sureway's motion to dismiss Swain's claims, counsel for Swain argued:

> With respect to the Consumer Protection Act – when it comes to RCW 46.71, a violation of that section is a per se violation under the Consumer Protection Act. That would be RCW 46.71.070.
>
> . . . .
>
> "[W]hen it comes to the Consumer Protection Act, if the Court wants to throw out the – under RCW 19.86, Plaintiffs don't have a problem with that. But we are alleging a per se violation of the CPA by a violation of the Automotive Repair Act.

[9] Given our disposition of the foregoing issues, we need not address the issue presented in Sureway's cross-appeal.