[No. 19368–6–I.   Division One.   March 14, 1988.]

MARINE ENTERPRISES, INC., *Respondent,* v. SECURITY
PACIFIC TRADING CORPORATION, *Appellant.*

*Jay H. Zulauf, Michael J. Hyde,* and *Mundt, Mac-Gregor, Happel, Falconer, Zulauf & Hall,* for appellant.

*Karl Dickman* and *Bauer, Moynihan & Johnson,* for respondent.

WILLIAMS, J.*—Security Pacific Trading Corporation (hereinafter SPTC) appeals from the superior court's designation of Marine Enterprises, Inc. (hereinafter MEI) as the prevailing party in a contract dispute and the court's award of attorney's fees to MEI. MEI cross–appeals for modification or vacation of the arbitration award. We affirm in part, reverse in part, and remand.

STATEMENT OF FACTS

MEI and SPTC entered into a contract on June 11, 1985, for the purchasing and processing of salmon in Bristol Bay,

---

*Judge William H. Williams is serving as a judge pro tempore of the Court of Appeals pursuant to RCW 2.06.150.

Alaska, for the season of June 20 to July 20, 1985. Under the contract, SPTC had the exclusive right to employ MEI's processing vessel, the *Peregrine.* The *Peregrine* was required "to be on site . . . and ready to begin processing no later than June 20, 1985."

SPTC was to purchase salmon from fishermen and hold them in chilled tanks until they could be loaded on the *Peregrine.* MEI was precluded from accepting fish from others during this season. In section 4 of the contract, SPTC guaranteed MEI "a total combined production of all species sufficient to generate Two Hundred Thousand Dollars ($200,000) in processing fees" during the period of operations contemplated in the agreement. This guaranty was subject to a provision that the *Peregrine* remain fully operational and capable of processing a minimum of 30,000 pounds of salmon per day during the contract term. Section 3 of the agreement states in part:

> Processor [MEI] warrants that the Vessel is equipped to and is capable of freezing a minimum of thirty thousand (30,000) pounds of fish per day, with a product frozen to 15 degrees F.

A minimum guaranty was set out in section 14 in the event the *Peregrine* was not capable of meeting this requirement. Section 14 states:

> For each day the Vessel is unavailable for processing in the areas and at the time specified by SPTC, or is otherwise incapable of processing a minimum of Thirty Thousand (30,000) pounds per day, the guarantee specified in this Section shall be reduced by the fees which would have been earned on the production lost as a result of said unavailability and/or incapacity, up to Fourteen Thousand Dollars ($14,000) per day.

Although the *Peregrine* had timely arrived in Bristol Bay on June 20, no deliveries of fish were made to the *Peregrine* until June 28. The matter was submitted to arbitration pursuant to the agreement, and the arbitrator found that SPTC breached the contract by failing to use its best efforts during June 20 to 28 to deliver fish to the *Peregrine.*

However, the arbitrator found that, under the circumstances, the omission was not a material breach because the *Peregrine* was not capable of processing a minimum of 30,000 pounds of fish per day down to a maximum of 15 degrees Fahrenheit. The *Peregrine*'s refrigeration system had failed to function adequately throughout the entire contract period. The arbitrator further reasoned that the *Peregrine*'s defective refrigeration system was a material breach of the contract by MEI which was neither waived nor excused by SPTC. Consequently, the arbitrator decided that MEI was not entitled to the $200,000 minimum guaranty.

The arbitrator found the reasonable value of MEI's services, for which it was not compensated, was $10,000. She also found that SPTC was entitled to $5,424 for the loss SPTC incurred from fish which were inadequately refrigerated. Although MEI originally requested $600,000, MEI was awarded a total of $5,701. MEI's major claims were denied.

MEI appealed the matter to superior court which confirmed the arbitration award. MEI was declared the "prevailing party" and was granted reasonable attorney's fees.

### ATTORNEY'S FEES

In Washington, attorney's fees may be awarded only when authorized by a private agreement, statute, or a recognized ground of equity. *Western Stud Welding, Inc. v. Omark Indus., Inc.*, 43 Wn. App. 293, 716 P.2d 959 (1986). The contract in this case is bilateral in that it explicitly authorizes attorney's fees for the party who wholly prevails or the party who substantially prevails if neither wholly prevails. It provides:

> In any controversy, claim or dispute arising out of, or relating to, this Agreement or the method and manner of performance thereof or the breach thereof, the prevailing party shall be entitled and awarded, in addition to any other relief, to a reasonable sum as litigation expenses. If

*neither* party *wholly prevails,* the *party that substantially prevails,* shall be awarded a reasonable sum as litigation expenses. . . . For the purposes of this provision, the terms "proceeding" and "litigation" shall include arbitration, administrative, bankruptcy, and judicial proceedings, including appeals therefrom.

(Italics ours.)

RCW 4.84.330 provides that a prevailing party is entitled to attorney's fees if the contract which is the subject of the action authorizes such an award.[1] Although RCW 4.84.330 applies to contracts with unilateral attorney's fees provisions, *Herzog Aluminum, Inc. v. General Am. Window Corp.,* 39 Wn. App. 188, 196–97, 692 P.2d 867 (1984) interprets RCW 4.84.330 as applying to bilateral provisions as well. In *Herzog,* the court permitted a defendant to recover attorney's fees pursuant to RCW 4.84.330 when he successfully defended a breach of contract action by proving that there was no enforceable contract. *Herzog* and its progeny stand for the proposition that where a purported contract allows attorney's fees to be awarded to a successful plaintiff, a successful defendant should be permitted to recover as well. *Park v. Ross Edwards, Inc.,* 41 Wn. App. 833, 706 P.2d 1097, *review denied,* 104 Wn.2d 1027 (1985).

When both parties to an action are afforded some measure of relief and there is no singularly prevailing party, neither party is entitled to attorney's fees under RCW 4.84.330. *Rowe v. Floyd,* 29 Wn. App. 532, 535–36, 629 P.2d 925 (1981). The determination as to who substantially prevails turns on the substance of the relief which is accorded the parties. *Rowe,* at 535 n.4; *see also McGary v. Westlake*

---

[1]RCW 4.84.330 provides:

"In any action on a contract or lease entered into after September 21, 1977, where such contract or lease specifically provides that attorney's fees and costs, which are incurred to enforce the provisions of such contract or lease, shall be awarded to one of the parties, the prevailing party, whether he is the party specified in the contract or lease or not, shall be entitled to reasonable attorney's fees in addition to costs and necessary disbursements.

". . .

"As used in this section 'prevailing party' means the party in whose favor final judgment is rendered."

*Investors,* 99 Wn.2d 280, 288, 661 P.2d 971 (1983); *Tallman v. Durussel,* 44 Wn. App. 181, 185, 721 P.2d 985, *review denied,* 106 Wn.2d 1013 (1986). In *Puget Sound Serv. Corp. v. Bush,* 45 Wn. App. 312, 724 P.2d 1127 (1986), where both parties prevailed on major issues, the court held that there were no prevailing parties under RCW 4.84.330 and no fees were awarded. *Cf. Wooding v. Sawyer,* 38 Wn.2d 381, 389, 229 P.2d 535 (1951) (where appellants secured substantial relief on appeal and respondent prevailed on the major issue of fraud and where more than 90 percent of the briefs were devoted to the issue of fraud, the respondent received costs regarding that item, but otherwise neither party received costs). In *Singleton v. Frost,* 108 Wn.2d 723, 742 P.2d 1224 (1987), the court held that where a contract provides for an award of attorney's fees, the trial court does not have the power to completely deny attorney's fees.

In the case sub judice, MEI and SPTC contracted that if neither wholly prevailed, then the substantially prevailing party would be awarded attorney's fees. When the court determined that MEI was the "prevailing party" and granted it $33,000 in attorney's fees, the court ignored the parties' specific contract language regarding attorney's fees. The court should have determined which party was the "substantially prevailing party" since neither party wholly prevailed. "Where the terms of a contract are plain and unambiguous, the intention of the parties shall be ascertained from the language employed." *Schauerman v. Haag,* 68 Wn.2d 868, 873, 416 P.2d 88 (1966). Thus, MEI's reliance on cases holding that the prevailing party is the party with an affirmative judgment rendered in his favor at the conclusion of the case is misplaced. *See American Fed. Sav. & Loan Ass'n v. McCaffrey,* 107 Wn.2d 181, 728 P.2d 155 (1986); *Ennis v. Ring,* 56 Wn.2d 465, 353 P.2d 950 (1959); *Moritzky v. Heberlein,* 40 Wn. App. 181, 183, 697 P.2d 1023 (1985).

MEI brought suit for $600,000, lost on all major issues, materially breached the contract and was awarded a net

judgment of $5,701 for services rendered. SPTC successfully defended all claims, did not materially breach the contract, and was awarded $5,424. MEI is not the substantially prevailing party.

■ Contractual authority as a basis for an award of attorney's fees at trial also supports such an award on appeal. RAP 18.1; *West Coast Stationary Eng'rs Welfare Fund v. Kennewick,* 39 Wn. App. 466, 477, 694 P.2d 1101 (1985). A contract which provides for attorney's fees to enforce a provision of the contract necessarily provides for attorney's fees on appeal. *Granite Equip. Leasing Corp. v. Hutton,* 84 Wn.2d 320, 327, 525 P.2d 223, 72 A.L.R.3d 1172 (1974).

SPTC prevailed on appeal; therefore, it is entitled to reasonable attorney's fees. SPTC requests $13,633 in legal fees and $3,317.85 for other expenses to date. An award of attorney's fees must be reasonable. RCW 4.84.020. "Whether attorney's fees are reasonable is a question of fact to be decided in light of the circumstances of each individual case." *Commercial Credit Corp. v. Wollgast,* 11 Wn. App. 117, 126, 521 P.2d 1191 (1974); *In re Renton,* 79 Wn.2d 374, 485 P.2d 613, 58 A.L.R.3d 196 (1971). The figure suggested by SPTC seems excessive. The question of reasonableness, however, is one for the arbitrator on remand.

MODIFICATION/VACATION OF ARBITRATION AWARD

In Washington arbitration is a creature of statute governed by a "code of arbitration", RCW 7.04. *Northern State Constr. Co. v. Banchero,* 63 Wn.2d 245, 249, 386 P.2d 625 (1963); *Agnew v. Lacey Co–Ply,* 33 Wn. App. 283, 654 P.2d 712 (1982). The code sets out grounds for vacation or modification of an arbitration award. RCW 7.04.160, .170. Specifically, RCW 7.04.160 provides in part:

> In any of the following cases the court shall after notice and hearing make an order vacating the award, upon the application of any party to the arbitration:
>   . . .

(4) Where the arbitrators exceeded their powers, or so imperfectly executed them that a final and definite award upon the subject matter submitted was not made.

█ Arbitrators acting under the authority granted them under a contract are the judges of both the law and facts. *Banchero*, at 249; *Keen v. IFG Leasing Co.*, 28 Wn. App. 167, 622 P.2d 861 (1980); *Moen v. State*, 13 Wn. App. 142, 533 P.2d 862, *review denied*, 85 Wn.2d 1018 (1975), *overruled on other grounds in Architectural Woods, Inc. v. State*, 92 Wn.2d 521, 598 P.2d 1372 (1979). Unless the award on its face reveals the adoption of an erroneous rule, or mistake in applying the law, the award will not be vacated or modified. *Lent's, Inc. v. Santa Fe Eng'rs*, 29 Wn. App. 257, 628 P.2d 488 (1981).

MEI contends that the arbitrator either applied an erroneous rule or made a mistake in applying the law and that those errors are evident from the face of the award. Specifically, MEI is referring to section 14 of the contract which states in part that SPTC guarantees a total production of fish sufficient to generate $200,000 in processing fees provided the *Peregrine* "remain fully operational and capable of processing . . . a minimum of thirty thousand (30,000) pounds of salmon per day throughout the period of operations". In the event the *Peregrine* is not operational, the contract provides for the reduction of the guaranty "by the fees which would have been earned on the production lost as a result of said unavailability and/or incapacity, up to Fourteen Thousand Dollars ($14,000) per day."

The arbitrator found that MEI's refrigeration system failed to function adequately throughout the entire contract period. She found that MEI's inability to process a minimum of 30,000 pounds per day was a material breach of the contract. Section 14 itself says that the guaranty only comes into play provided the *Peregrine* remain fully operational and capable of processing 30,000 pounds per day. The arbitrator did not adopt an erroneous rule nor did she

mistakenly apply the law. Assuming arguendo that the provision of section 14 is a liquidated damages clause, a plaintiff cannot recover liquidated damages for a breach to which he has contributed, and there can be no apportionment of such damages when both parties are at fault. *Baldwin v. National Safe Depository Corp.*, 40 Wn. App. 69, 697 P.2d 587, *review denied*, 104 Wn.2d 1002 (1985).

We affirm the court's decision as to the arbitration award and reverse as to its "prevailing party" determination and award of attorney's fees. SPTC is granted attorney's fees on appeal; the arbitrator is instructed to determine and grant a reasonable award.

GROSSE and WEBSTER, JJ., concur.

Reconsideration denied June 2, 1988.

Review denied by Supreme Court October 4, 1988.