IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | |
|---|---|
| JAMES PREKEGES, an individual, | No. 85887-4-I |
| Appellant, | |
| v. | |
| LEHRER S. WILLIS and BRIDGETTE N. TAKEUCHI and the marital community comprised thereof, | UNPUBLISHED OPINION |
| Respondents. | |

BOWMAN, J. — James Prekeges appeals a jury's verdict rejecting his breach of contract, unilateral mistake, and negligent misrepresentation claims against Lehrer Willis and Bridgette Takeuchi. Because sufficient evidence supports the verdict, we affirm.

FACTS

Prekeges owned four undeveloped real estate lots in unincorporated King County near Redmond. In 2015, Willis[1] bought "Lot 4" from Prekeges for $375,000. Willis planned to build their family home on the property. To do so, they needed a building permit from King County. But when they applied for the permit in late 2017, the county informed Willis that they would need to obtain an agreement from Prekeges that the existing drinking-water well shared with the

---

[1] For clarity, we use Willis to refer to Lehrer Willis and Bridgette Takeuchi collectively, and refer to Lehrer and Bridgette by their first names when discussing their individual actions or testimony.

adjoining lot, "Lot 3," would "have to be upgraded to a Group B water system" if Prekeges chose to develop it.

In March 2018, Willis prepared a mutual "Declaration of Covenant" for Prekeges, attesting that the owners of Lots 3 and 4 would upgrade the well if Prekeges developed Lot 3. Prekeges refused to sign the declaration and told Willis that he needed more information. After some time, Prekeges still refused to sign the declaration, so Willis concluded they could not move forward with building their home.

In July 2018, Willis offered to sell the property back to Prekeges "for $400,000 cash." Willis believed that was a fair price given their two-plus-year investment in preparing the lot for development. Prekeges expressed interest in buying the property and recouping some of the work Willis had put into development but told them that he first needed to do his "due diligence" in determining the price.

Prekeges then spoke to a developer about the property and talked to Lehrer about whether the building permit application was transferable. Lehrer did not know whether the permit was transferable but told Prekeges he was "pretty sure that [Prekeges] would need to resubmit with the County anyway as it would be a new house design, site plan, etc." Prekeges later learned that building permit applications could transfer with the sale of property but did not share that information with Willis.

By July 31, 2018, Prekeges and Willis had not reached an agreement for the repurchase of Lot 4, so Willis rescinded their offer and listed the property for

2

sale on a real estate multiple listing service for $550,000. And a week later on August 6, Lehrer emailed King County, cancelling their building permit application. Soon after, Willis received a full-price offer to purchase their land.

On August 9, 2018, Prekeges' attorney sent Willis a demand letter, insisting that Prekeges had "an enforceable legal and equitable right to purchase Lot 4 at the agreed price of $375,000" and adding that Prekeges "is prepared to litigate vigorously." But to avoid litigation, Prekeges offered to purchase the property for $400,000. In an effort to avoid a lawsuit, Willis backed out of their pending sale and responded to Prekeges with a counteroffer of $440,000.

On August 22, 2018, Prekeges suggested that the parties split a purchase price of $415,000 into two categories: $375,000 for the property and $40,000 for the "studies, drawings, and other work product connected with [the] development activities." Prekeges suggested that the division between compensation for real property and personal property would favor Willis in capital gains taxes. Willis accepted Prekeges' offer.

On August 27, 2018, the parties executed a "Personal Property Agreement" (PPA). In the PPA, Willis agreed to deliver "all Personal Property in [their] possession related in any way to the Development Activities." The PPA noted that Willis "has undertaken various activities in connection with potential development of the Realty, including but not limited to studies, drawings, [and] applications to various governmental entities." The parties also executed a "release to Prekeges of all documentation, information or tangible items held by third parties to which [Willis] would personally have the right to acquire."

3

On August 29, 2018, Lehrer delivered to Prekeges' attorney hard copies of documents and a thumb drive containing digital documents related to Willis' development activity. Prekeges' attorney immediately reviewed the documents while Lehrer waited. Neither the paper documents nor the thumb drive included Willis' email communications with the county cancelling the building permit application. After his review, Prekeges' attorney told Lehrer that "everything looked okay." Later that day, Prekeges picked up the documents from his attorney and paid Willis $40,000 per the PPA. A few days later, Prekeges contacted the county and learned for the first time that Willis had cancelled the building permit application.

On July 29, 2021, Prekeges sued Willis, alleging breach of contract, fraud, negligent misrepresentation, mutual mistake, unilateral mistake, and promissory estoppel. On cross-motions for summary judgment, the trial court ruled that Willis breached the PPA by failing to produce their email communications with the county cancelling the permit application. But it left for the jury to decide whether Prekeges suffered any damages from the breach. The court also dismissed Prekeges' mutual mistake and promissory estoppel claims.

The case proceeded to jury trial in July 2023 on the remaining claims of breach of contract, fraud, negligent misrepresentation, and unilateral mistake. At trial, the parties testified consistently about the events prompting the execution of the PPA but disagreed about whether the transfer of Willis' active building permit application was a condition of the PPA.

Prekeges testified that he asked Willis about whether the permit was transferable and told Willis the transfer was a condition of the agreement. He said he believed Willis offered to sell him the active permit application and he would not have agreed to purchase Willis' development documents without it. While Prekeges conceded he never told Willis that he learned the permit transferred with the property, he showed the jury emails in which he told Willis that the development documents were of no value to him if the building permit application could not be transferred.

Willis testified that they were unaware that the building permit application could be transferred to Prekeges, that they did not know Prekeges wanted to use their application to permit his own building plans, and that they cancelled the permit application because they no longer planned to build a house on the land. They also testified that Prekeges never told them he learned the permit was transferable, that there was no discussion about the building permit application during their negotiations to sell the property, and that they never represented to Prekeges that they would transfer the active permit application.

Willis presented expert testimony from Nolan Radke, a builder who works in construction dispute resolution. Radke testified that the personal documents Willis sold to Prekeges had value even without the active permit application. Radke told the jury that Prekeges could have easily resubmitted the studies and other development "legwork" to the county with a new permit application.

The jury returned a verdict for Willis. It concluded that Prekeges suffered no damages from Willis' failure to provide Prekeges their email communications

with the county and that Willis did not breach the PPA by not transferring their active building permit application to Prekeges. And it rejected Prekeges' fraud, negligent misrepresentation, and unilateral mistake claims. On September 26, 2023, the court entered final judgment for Willis, awarding them $119,135.12 in attorney fees and costs.

Prekeges appeals.

ANALYSIS

Prekeges argues substantial evidence does not support the jury's findings that he suffered no damages from Willis' breach of contract for not producing their emails with the county cancelling the permit application or its rejection of his claims for negligent misrepresentation and unilateral mistake.[2] We address each argument in turn.

We review civil jury verdicts for substantial evidence. *See Guijosa v. Wal-Mart Stores, Inc.*, 144 Wn.2d 907, 915, 32 P.3d 250 (2001) (courts can overturn a jury verdict only when it is clearly unsupported by substantial evidence). Substantial evidence supports a jury's verdict if the record contains a sufficient quantity of evidence to persuade a rational, fair-minded person of the truth of the premise. *Winbun v. Moore*, 143 Wn.2d 206, 213, 18 P.3d 576 (2001). If reasonable minds could differ about the outcome, we will not disturb the jury's verdict. *Id.* at 217.

When reviewing for substantial evidence, we do not make credibility determinations or weigh conflicting evidence. *Quinn v. Cherry Lane Auto Plaza,*

---

[2] Prekeges does not challenge the jury's rejection of his claims for fraud and breach of contract.

*Inc.*, 153 Wn. App 710, 717, 225 P.3d 266 (2009).  And we "must consider all evidence and draw all reasonable inferences in the light most favorable to the verdict."  *Gorman v. Pierce County*, 176 Wn. App. 63, 87, 307 P.3d 795 (2013).

1.  Breach of Contract Damages

Prekeges argues that substantial evidence does not support the jury's finding that he suffered no damages from Willis' failure to produce the emails that showed they cancelled their building permit application.  According to Prekeges, Willis' breach of the PPA entitled him to at least $40,000 as "benefit of the bargain damages."  We disagree.

At summary judgment, the trial court ruled that Willis breached the PPA by failing to provide Prekeges with their email communications cancelling their permit application.  Accordingly, the court instructed the jury:

> The Court has found that Defendants [Willis] breached the PPA when they did not produce email communications between [Willis] and the King County Department of Permitting and Environmental Review . . . regarding [their] cancelation of the building permit application.

But the trial court did not conclude at summary judgment that Willis' breach was material.  So, it also instructed the jury that a "material breach" is

> one that substantially defeats the purpose of the contract, or relates to an essential element of the contract, and deprives the injured party of a benefit that he or she reasonably expected.

The court then instructed the jury that if Prekeges proved that Willis breached the contract and that he "incurred actual damages as a result of the . . . breach," it must determine the amount of those damages.  The instruction

explained:

> Actual damages are those losses that were reasonably foreseeable, at the time the contract was made, as a probable result of a breach.  A loss may be foreseeable as a probable result of a breach because it follows from the breach either
> (1)  in the ordinary course of events, or
> (2)  as a result of special circumstances, beyond the ordinary course of events, that the party in breach had reason to know.
> In calculating Plaintiff [Prekeges'] actual damages, you should determine the sum of money that will put the Plaintiff . . . in as good a position as [he] would have been in if both [Prekeges] and [Willis] had performed all of their promises under the contract.

At trial, Lehrer and Bridgette each testified that the parties did not contemplate transferring an active permit application as part of the PPA.  Indeed, they testified they were unaware that such a thing could be done.  They told the jury that they cancelled the permit application because they were no longer going to build the house that was the subject of the permit, so it was no longer necessary for the application to remain active.

Based on that testimony, the jury could reasonably conclude that transfer of the active permit application was not a condition of the PPA.  As such, the failure to include the emails showing Willis cancelled the permit did not materially breach the PPA and did not deprive Prekeges of the benefit of his bargain.  As a result, no actual damages flowed from the breach.

Still, citing *Brinkerhoff v. Campbell*, 99 Wn. App. 692, 994 P.2d 911 (2000), and *Johnson v. Brado*, 56 Wn. App. 163, 783 P.2d 92 (1989), Prekeges argues that Willis' "non-disclosure of a fact required to be disclosed is equivalent to misrepresentation," and that a party deceived by misrepresentation may recover "benefit of the bargain" damages.  But *Brinkerhoff* is inapt.  The trial court

8

determined that Willis breached the PPA for failure to provide all documents related to development, not for deceiving Prekeges or misrepresenting facts.[3] And, as discussed above, substantial evidence supports the jury's determination that Willis' breach was not material. As a result, Prekeges received the benefit of his bargain, and he suffered no damages from the breach.[4]

2. Negligent Misrepresentation

Prekeges argues that substantial evidence does not support the jury's rejection of his negligent misrepresentation claim because Willis did not disclose that they cancelled the building permit application. We disagree.

The court instructed the jury that to prove negligent misrepresentation, Prekeges must show, by clear, convincing, and cogent evidence,

(1) that Defendants [Willis] had a duty to disclose to Plaintiff [Prekeges] that they had cancelled their building permit application prior to signing of the PPA;

(2) that [Willis] did not disclose this information to [Prekeges];

(3) that [Willis] were negligent in failing to disclose this information;

(4) that disclosure of this information would have caused [Prekeges] to act differently; and

(5) that [Prekeges] was damaged by the failure to disclose this information.

It also told the jury that a party has a duty to disclose "subsequently acquired

---

[3] Indeed, as discussed below, substantial evidence supports the jury's rejection of Prekeges' negligent misrepresentation claim.

[4] Prekeges argues that he did not receive the benefit of his bargain because the active permit application was the only document of significant value. But expert witness Radke testified that the other documents had value independent of the active permit application and Prekeges could easily use them to apply for a new building permit. The jury was entitled to give more weight to Radke's testimony. *Quinn*, 153 Wn. App at 717.

information that the party knows will make untrue or misleading a previous representation that when made was true or believed to be so."

As discussed above, Willis testified at trial that they did not negotiate for the transfer of the building permit application specifically or even discuss the permit application when they were negotiating the PPA. Neither they nor Prekeges expressed an interest in transferring the permit application. Willis was unaware that the application could be transferred, and Prekeges did not tell them that he learned it could. From this testimony, the jury could reasonably conclude that Willis did not represent to Prekeges that they would transfer an active building permit application to him, so Willis had no duty to disclose to Prekeges that they cancelled the application.

Prekeges argues that the evidence shows otherwise. He says the "fact that [Willis] had applied for and were seeking to obtain a building permit was the context and assumption underlying all the dealings between the parties." In support of his argument, Prekeges points to his email exchanges with Lehrer discussing the permit application. But these emails were before the jury, and we do not weigh conflicting evidence or assess credibility of witnesses on appeal. *Quinn*, 153 Wn. App at 717.

Substantial evidence supports the jury finding that Willis did not negligently misrepresent to Prekeges that they would transfer their active building permit application.

3. Unilateral Mistake

Finally, Prekeges argues that substantial evidence does not support the jury's rejection of his unilateral mistake claim that Willis caused the cancellation of the building permit application without his knowledge, and that Prekeges would not have entered into the PPA if he had known that the application was cancelled and not revivable. Again, we disagree.

The court instructed the jury that to prove unilateral mistake, Prekeges had to show by clear, convincing, and cogent evidence that

(1) the party was mistaken as to a basic assumption regarding existing facts, upon which the party relied in making the contract;

(2) the mistake changed the bargain so much that the party seeking to rescind would not have entered into the contract if the party had been aware of the mistake[;] and

(3) the other party knew or had reason to know of the mistake, or the other party's fault caused the mistake.

As discussed, Willis testified at trial that they were unaware that a permit transfer was possible. They said—and Prekeges confirmed—that Prekeges did his own investigation into the transferability of the permit and did not tell them that he learned the permits were transferable. They testified that they did not negotiate about the transfer of the application. Specifically, they told the jury that the words "permit" and "transfer" did not come up in negotiations or in the PPA, and Prekeges conceded those words did not appear "in all the letters and emails exchanged between [the parties] between August 13th and August 23rd" 2018.

Willis further explained that they cancelled the permit because they were no longer going to build their family home and did not think that Prekeges would

11

want to build the home they designed.  And they cancelled the permit application after listing the property for sale but before receiving the demand letter from Prekeges' attorney about selling the property back to him.

From this testimony, the jury could reasonably conclude that Willis did not know or have reason to know that Prekeges mistakenly believed they would transfer an active permit application, and that Willis did not cause Prekeges to hold that mistaken belief.

Prekeges again argues that the evidence showed Willis did know, or at least should have known, about the permit's importance to him.  In support of his argument, Prekeges points to the documents' purchase price of $40,000 and an email he sent Willis explaining that the development-related documents had " 'zero value' " to him without the permit.  But again, this evidence was before the jury, and we do not reweigh the evidence.  *Quinn*, 153 Wn. App at 717.  It is the jury's province to resolve conflicting evidence and decide facts.[5]

Because substantial evidence supports the jury's verdict, we affirm the judgment for Willis.[6]

4.  Attorney Fees

Willis requests attorney fees on appeal under RAP 18.1 and *Marine Enterprises, Inc. v. Security Pacific Trading Corp.*, 50 Wn. App. 768, 750 P.2d

---

[5] Prekeges argues in the alternative that Willis caused Prekeges' mistake by canceling their permit application and concealing that information from him.  But Willis testified that they did not know Prekeges believed an active permit application was part of the bargain.  So, substantial evidence supports the jury finding that Willis did not cause Prekeges' mistaken belief.

[6] And because Prekeges is not the prevailing party on appeal, we deny his request for appellate attorney fees under RAP 18.1 and *Marine Enterprises, Inc. v. Security Pacific Trading Corp.*, 50 Wn. App. 768, 750 P.2d 1290 (1988).

1290 (1988). Under RAP 18.1(a), we may award attorney fees on appeal if "applicable law grants to a party the right to recover reasonable attorney fees." And under *Marine Enterprises*, "[c]ontractual authority as a basis for an award of attorney's fees at trial also supports such an award on appeal." 50 Wn. App. at 774.

Here, the PPA provides:

In the event of any dispute arising under this Agreement, any non-breaching party shall be entitled to recover from any breaching party all reasonable attorney fees and costs incurred arising from such breach, including but not limited to fees and costs incurred in collecting on any judgment obtained or on appeal.

Willis does not show that they are entitled to attorney fees under the PPA provision. While they are the prevailing party on appeal, Prekeges is not a "breaching party." As a result, the PPA does not authorize an award of attorney fees or costs to Willis.

We affirm.

_____
Brennan, J

WE CONCUR:

_____         _____
Chung, J.                          Dwyer, J.

13