# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| PACIFIC PILE & MARINE, LP, a foreign limited partnership, | No. 86332-1-I |
| Respondent, | DIVISION ONE |
| v. | UNPUBLISHED OPINION |
| GRAHAM CONTRACTING, LTD, a Washington corporation; and TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, a foreign corporation, | |
| Appellants. | |

BIRK, J. — Graham Contracting LTD acted as general contractor on a bridge restoration project and hired Pacific Pile & Marine LP (PPM) as a subcontractor to install and later remove temporary bridges between summer 2018 and summer 2020. The project was suspended due to the COVID-19 pandemic, which required the temporary bridges to remain on the project site for an additional year. PPM sued Graham, alleging numerous theories aimed at recovering additional compensation for the extended use of the bridges. The jury concluded Graham breached the implied duty of good faith and fair dealing by not suing or pursuing the project owner for PPM's claim. Graham appeals, arguing the trial court erred in denying its postverdict CR 50(b) motion, PPM failed to establish facts upon which relief can be granted under RAP 2.5(a)(2), the trial court erred in awarding PPM prejudgment interest, and the trial court erred in awarding PPM attorney fees.

We conclude the trial court erred in awarding prejudgment interest, and we otherwise affirm. We further award PPM attorney fees on appeal.

I

This matter arises from a Washington State Department of Transportation (WSDOT) public works project involving the rehabilitation of two bridges. WSDOT hired Graham as general contractor for the project, and PPM subcontracted with Graham to design, furnish, install, and remove steel trestles associated with the project. Because the bridges spanned the Yakima River, there were restrictions associated with aquatic life, meaning contractors could complete construction that physically touched the water only during an "in-water work window" between July 15 and September 15 of each calendar year. The project required two mobilizations from PPM, once in the summer of 2018 to install the temporary bridges, and once in the summer of 2020 to remove the bridges. PPM mobilized to the bridge sites in July 2018.

In March 2020, WSDOT issued a stop work order due to COVID-19, which indefinitely shut down all onsite work. The order resulted in a two month work suspension. As a result of the suspension, PPM was unable to remove its steel trestles until the summer 2021 "in-water work window," one year later than originally planned. WSDOT agreed to pay PPM $55,042.00 for the two month suspension. PPM requested additional compensation for the costs incurred as a result of the one year delay. Graham submitted PPM's claim to WSDOT, which was rejected. PPM requested reconsideration of its claim, Graham submitted the reconsideration request to WSDOT, and WSDOT rejected the claim. Graham did

not bring a third-party claim against WSDOT on behalf of PPM, which PPM asserts was required under the subcontract.

PPM filed suit against Graham.[1]  By the time of trial, PPM asserted five claims which were ultimately submitted to the jury, for breach of contract, breach of good faith and fair dealing under three different theories, and quantum meruit.

The trial lasted two and a half weeks.  After PPM rested its case in chief, Graham moved for a judgment as a matter of law under CR 50(a).  Graham argued that PPM did not introduce any evidence to determine that market rate rent was an available remedy under the contract, and PPM sought consequential damages that were precluded under the subcontract.  The trial court did not decide Graham's CR 50(a) motion before the case was submitted to the jury, and requested that Graham renew its motion after the verdict.

The jury returned its verdict, rejecting four of PPM's five claims, but finding that Graham breached the duty of good faith and fair dealing under the parties' subcontract by failing to file suit or otherwise pursue PPM's claim against WSDOT.  The jury awarded PPM $339,889.00 in damages.

After the verdict, Graham filed a renewed motion for judgment as a matter of law pursuant to CR 50(b).  Graham now argued PPM had offered no evidence to prove there was a contractual obligation for Graham to sue WSDOT or that PPM suffered any damages from Graham's failure to sue.  The trial court denied Graham's renewed motion.

---

[1] PPM also filed suit against Travelers Casualty Surety Company of America, who issued payment and performance bonds in connection with the bridge project.

PPM filed a motion for entry of judgment on the jury's verdict and requested prejudgment interest. The trial court entered judgment in favor of PPM, and awarded PPM prejudgment interest from March 3, 2022—the day WSDOT notified Graham of its final determination rejecting PPM's second claim—to the date of the court's order.

Both Graham and PPM moved for attorney fees. The trial court awarded PPM its requested attorney fees, and did not segregate the amount of attorney fees expended to litigate the failed claims from claim 3 because "the claim upon which PPM prevailed . . . substantially arose from the same set of facts that gave rise to the other failed claims." However, the court partially segregated the fees and costs associated with claim 4.[2] The trial court did not award Graham any fees or costs.

Graham appeals.

II

Graham argues that the trial court erred in denying judgment as a matter of law because the verdict was "not supported by substantial evidence." (Capitalization omitted.) Graham advances two arguments on appeal as to why the trial court erred: (1) Graham had no contractual obligation to sue WSDOT on PPM's behalf and (2) PPM failed to show evidence of recoverable damages. We conclude that Graham failed to preserve its first argument, and the trial court did not err in rejecting the second argument.

_____

[2] Whether "PPM proved by a preponderance of the evidence presented at trial its claim that Graham breached the parties' Subcontract by breaching the duty of good faith and fair dealing by not accelerating."

4

"[A] party must file a motion for a judgment as a matter of law *before* submitting the case to the jury if the party wishes to *renew* its previous motion after the jury returns a verdict." Millies v. LandAmerica Transnation, 185 Wn.2d 302, 314-15, 372 P.3d 111 (2016). If a party does not make the motion before the case is submitted to the jury, the party waives its right to file the motion later. Id. at 315. "[A] renewed CR 50 motion cannot present new legal theories that were not argued before the verdict." Gorman v. Pierce County, 176 Wn. App. 63, 86, 307 P.3d 795 (2013).

A

On appeal, Graham argues that the implied duty of good faith and fair dealing does not apply because it had no contractual obligation to sue WSDOT. Graham advances three reasons in this court why it had no contractual duty. The first is that the subcontract expressly granted Graham the right to decline such a request to pursue litigation against WSDOT "at its *sole option.*" Graham has waived this argument because it did not present it in its CR 50(a) motion before the case was submitted to the jury. Following the close of PPM's case in chief, Graham moved for judgment as a matter of law on two grounds: (1) PPM failed to present any evidence that Graham agreed to pay rent for the temporary bridges, and (2) PPM's claimed damages are precluded as consequential damages. After the jury returned its verdict, in its renewed CR 50(b) motion, Graham raised two new arguments: (1) PPM failed to present any evidence that Graham was contractually obligated to sue WSDOT, and (2) PPM failed to present evidence that it was damaged by Graham not suing WSDOT.

5

The second reason Graham advances is that the main contract required PPM to initiate litigation against Graham within 180 days of the final acceptance of the project. Graham never sought judgment as a matter of law under either CR 50(a) or (b) based on this argument.[3]

The third reason Graham advances is that the duty of good faith and fair dealing cannot compel Graham to forgo express contractual rights. Graham has waived this argument, as it did not present it in its CR 50(a) motion before the case was submitted to the jury.

It follows that each of the legal theories Graham presents on appeal on this issue is a new legal theory that it did not preserve before the case was submitted to the jury. Despite this, Graham argues that "to pursue a theory in a CR 50(b) motion, the moving party must have advanced that theory in its CR 50(a) motion *or* argued before the jury." Graham contends that so long as it argued a theory to the jury in closing, it could present that theory as grounds for judgment as a matter of law under CR 50(b), even if it had not presented the argument under CR 50(a) before the case was submitted to the jury. Graham is incorrect. Graham cites Browne v. Cassidy, 46 Wn. App. 267, 269, 728 P.2d 1388 (1986), where the court held the plaintiff could not use CR 50 to obtain a judgment against the defendant on a theory that she did not present to the jury. But Browne did not hold the

---

[3] In the fact section of Graham's renewed motion for judgment as a matter of law, Graham noted, "As that provision flows down to PPM, it means that PPM had to bring its action against Graham within 180 days of final acceptance of the project in Thurston County Superior Court." However, a footnote stated, "Graham did not dispute the timeliness of PPM's lawsuit nor the venue in King County Superior Court." This is the only reference to the notice requirement found within either motion.

opposite, that a party could rely on CR 50(b) to present an argument solely based on arguing it to the jury. Moreover, at the time of Browne, former CR 50(b) (1984) did not limit CR 50(b) arguments to those presented under CR 50(a), as the rule does now. Under the former rule,[4] a party was not required to file a motion under CR 50(a) to preserve their right to file a motion under CR 50(b), unlike the current requirement. See Millies, 185 Wn.2d at 314-15. The rule is that "a party is bound by the legal theories pleaded and argued before the jury renders a verdict." Browne, 46 Wn. App. at 270.

Graham did not argue it lacked a contractual obligation to sue WSDOT before the jury returned a verdict. Furthermore, this question was submitted to the trier of fact as a question of fact. In instructions to which Graham took no exception, the jury was instructed to determine the intent of the contracting parties. During closing arguments, Graham cited specific language in the subcontract as evidence that Graham had never assumed a contractual obligation to sue WSDOT, and argued the language should be interpreted to find there was no breach of the duty of good faith and fair dealing. PPM argued in closing arguments that both the subcontract and main contract language "spell out the steps on how the contractor, Graham, shall pursue the claim." Only after the question of a contractual undertaking was submitted to the jury as one of fact did Graham argue there was insufficient evidence that Graham was contractually obligated to sue WSDOT. By

---

[4] Former CR 50(b) (1984) stated, "Not later than 10 days after the entry of judgment or after the jury is discharged if no verdict is returned, whether or not he has moved for a directed verdict and whether or not a verdict was returned, a party may move for judgment notwithstanding the verdict."

failing to present its legal sufficiency argument before the case was submitted to the jury, and by instead submitting the question to the jury as one of fact as to what promises Graham made, Graham conceded that there was sufficient evidence for the trier of fact to reach the conclusion Graham made the disputed promise. See Kirsch v. Fleet St., Ltd., 148 F.3d 149, 164 (2d Cir. 1998) (a party is not entitled to challenge on appeal the sufficiency of the evidence to support the jury's verdict on a given issue unless it has moved for judgment as a matter of law before the case is submitted to the jury) (citing Fed. R. Civ. P. 50(a)(2)); Laymon v. Lobby House, Inc., 613 F. Supp. 2d 504, 511 (D. Del. 2009) (the prerequisite rule is necessary to preserve a litigant's Seventh Amendment right that no fact tried by a jury shall be reexamined).[5] Because Graham did not present its legal sufficiency argument in its CR 50(a) motion, and this question was submitted to the trier of fact as one of fact, this claim is not preserved for appeal.

B

Graham also argues that the trial court erred in denying its CR 50(b) motion because PPM failed to show evidence of recoverable damages due to breach of the duty of good faith and fair dealings. While Graham has preserved this

---

[5] CR 50 is analogous to Fed. R. Civ. P. 50. Washburn v. City of Federal Way, 178 Wn.2d 732, 750, 310 P.3d 1275 (2013). " 'Where a state rule parallels a federal rule, analysis of the federal rule may be looked to for guidance' in interpreting the state rule." Id. (quoting Beal v. City of Seattle, 134 Wn.2d 769, 777, 954 P.2d 237 (1998)). In Washburn, the court held that the federal interpretation of Fed. R. Civ. P. 50, which requires a postverdict motion to preserve the claim that the trial court erroneously denied a preverdict motion, has not taken root in Washington. 178 Wn.2d at 749-50. However, Washburn acknowledged that the 2005 amendment to CR 50 adopted the federal practice of a waiver requirement for making a CR 50(a) motion in the first place. Id. at 751 n.7.

8

argument, we conclude the trial court did not err in denying Graham's CR 50(b) motion.

In its CR 50(a) motion, Graham argued that PPM provided no evidence that market rental value was an available remedy under the contract, and therefore it was not a foreseeable damage that could be recovered. In its renewed CR 50(b) motion, Graham argued PPM did not provide evidence of the fact or extent of its claimed damages stemming from Graham's decision not to sue WSDOT. Though worded differently, we conclude these claims are essentially the same, as PPM sought damages for the additional time the trestle equipment was on the project site and asked the jury to use a market rental rate to determine its damages.

When reviewing the grant or denial of a motion for judgment as a matter of law, we engage in the same inquiry as the trial court, accepting the truth of the nonmoving party's evidence and all reasonable inferences that can be drawn from it. Faust v. Albertson, 167 Wn.2d 531, 537, 222 P.3d 1208 (2009). A motion for judgment as a matter of law is proper only when the court can find, as a matter of law, that there was no substantial evidence or reasonable inference to sustain a verdict for the nonmoving party. Guijosa v. Wal-Mart Stores, Inc., 144 Wn.2d 907, 915, 32 P.3d 250 (2001). Evidence is substantial to support a verdict if it is sufficient to persuade a fair-minded, rational person of the truth of the declared premise. Brown v. Superior Underwriters, 30 Wn. App. 303, 306, 632 P.2d 887 (1980).

Graham is not entitled to judgment as a matter of law because PPM produced evidence of the existence of damages sufficient to support a verdict.

9

PPM requested compensation "based on fair market rental value in the amount of $1,623,74.12." PPM's vice president of operations, testified that the price was calculated on a "price-per-pound basis," and provided a breakdown of the calculation for the 10 months of compensation PPM was requesting. The owner and senior project manager for a general contractor company, reviewed the value of PPM's temporary trestles and testified the calculation was "reasonable" and "right in the middle of where that range was on a—on a rate for their—for their 10-month period."

Graham further argues that "PPM cannot show that the lack of a lawsuit by Graham against WSDOT caused PPM any harm, unless it can show by a preponderance of the evidence that Graham would have succeeded in recovering damages against WSDOT in such a lawsuit that then would flow to PPM." PPM points to its right to a change per the subcontract. The "Change Orders" section of the subcontract states that Graham may, "without invalidating this Subcontract, order in writing extra work or make changes by altering, adding to, or deducting from the work, and the Subcontract price shall be adjusted as agreed." Then, WSDOT paid $55,042.00 for two months of delays. This supports the inference that, if sued, it is likely WSDOT would have paid more. "[T]he weight to be given to the evidence" is within the province of the jury and "even if convinced that a wrong verdict has been rendered, the reviewing court will not substitute its judgment for that of the jury, so long as there was evidence which, if believed, would support the verdict rendered." Burnside v. Simpson Paper Co. 123 Wn.2d 93, 108, 864 P.2d 937 (1994) (emphasis omitted). This inference, if believed,

10

would support the verdict rendered. Given the deference we must show to a verdict, we conclude the trial court did not err in denying Graham's CR 50(b) motion.

III

Alternatively, Graham argues this court should reverse the verdict under RAP 2.5(a)(2) because PPM failed to establish facts upon which relief can be granted regarding breach of the duty of good faith and fair dealing. Graham raises three arguments: (1) PPM failed to establish a contractual duty, (2) PPM failed to establish that Graham's decision not to sue WSDOT proximately caused it damages, and (3) PPM failed to establish it complied with the contractual notice procedures. We conclude these issues are not reviewable under RAP 2.5(a)(2) in the circumstances presented here.

In general, issues not raised in the trial court may not be raised on appeal. RAP 2.5(a). However, RAP 2.5(a)(2) permits a party to raise "failure to establish facts upon which relief can be granted" for the first time on appeal. Gross v. City of Lynnwood, 90 Wn.2d 395, 400, 583 P.2d 1197 (1978). Our Supreme Court has consistently stated that "a new issue can be raised on appeal 'when the question raised affects the right to maintain the action.' " Roberson v. Perez, 156 Wn.2d 33, 40, 123 P.3d 844 (2005) (internal quotation marks omitted) (quoting Bennett v. Hardy, 113 Wn.2d 912, 918, 784 P.2d 1258 (1990)).

Traditionally, this provision has been the basis for considering on appeal a challenge to the prevailing party's evidence due to failure to establish some essential element of its case. In Roberson, a tort judgment for negligent

11

investigation was reversed on appeal because the plaintiff had not been the subject of a harmful placement decision—as an element that was required to sustain a judgment for negligent investigation. 156 Wn.2d at 39-40, 46. Similarly, a claim of unlawful age discrimination failed under RAP 2.5(a)(2) where the defense pointed out on appeal that the plaintiff was too young to bring a claim under the statute. Gross, 90 Wn.2d at 400. In contrast, in Cole v. Harveyland, LLC, the plaintiff sued her previous employer for a discrimination claim under Washington Law Against Discrimination (WLAD), ch. 49.60 RCW. 163 Wn. App. 199, 203, 211, 258 P.3d 70 (2011). The issue was whether the plaintiff's failure to put on evidence that the defendant did not meet the statutory exemption for employers of fewer than eight employees could be raised for the first time on appeal. Id. at 209. The court held review under RAP 2.5(a)(2) was unwarranted where the defendant did not show that WLAD classified the numerosity requirement as an element the plaintiff needed to prove, as opposed to a defense that could be waived. Cole, 163 Wn. App. at 211-12. And RAP 2.5(a)(2) has not been applied in cases where the facts were unclear or agreed upon by the parties in the trial court. See Mukilteo Ret. Apts., LLC v. Mukilteo Invs. LP, 176 Wn. App. 244, 258-59, 310 P.3d 814 (2013) (party who agreed at trial contract was valid could not use RAP 2.5(a)(2) to argue lack of proof of element on appeal).

These decisions do not support resort to RAP 2.5(a)(2) other than where a factual circumstance established beyond possible dispute conclusively eliminates an essential element of a claim. The arguments Graham presents fall outside this scope. In this case, the evidence was disputed and presented questions of fact

concerning whether Graham had contractually promised to pursue PPM's claims against WSDOT, whether its not doing so proximately damaged PPM, and whether the contractual notice provisions applied to PPM, and if they did, whether PPM complied with them. As already discussed above, there was competing extrinsic evidence on whether Graham had promised to pursue PPM's claims against WSDOT and competing inferences about whether WSDOT would have paid more had Graham done so. And, the court instructed that PPM had the burden of proving that all conditions precedent—including notice—have been fulfilled or were excused. And here, the jury also had to decide whether the notice requirement applied to PPM. Based on its verdict, the jury concluded either that the notice provisions did not apply, or that PPM met its burden of proof that it complied with them.

Where there is conflicting evidence and conflicting inferences, these are questions of fact appropriately submitted to the jury. "The touchstone of contract interpretation is the parties' intent." Tanner Elec. Coop. v. Puget Sound Power & Light Co., 128 Wn.2d 656, 674, 911 P.2d 1301 (1996). "Contract interpretation is normally a question of fact for the fact-finder" where the contract is ambiguous. Spradlin Rock Prods., Inc. v. Pub. Util. Dist. No. 1 of Grays Harbor County, 164 Wn. App. 641, 654-55, 266 P.3d 229 (2011). " 'If only one reasonable meaning can be ascribed to the agreement when viewed in context, that meaning necessarily reflects the parties' intent; if two or more meanings are reasonable, a question of fact is presented.' " Kenney v. Read, 100 Wn. App. 467, 475, 997 P.2d 455, 4 P.3d 862 (2000) (internal quotation marks omitted) (quoting Martinez v.

13

Miller Indus., Inc., 94 Wn. App. 935, 943, 974 P.2d 1261 (1999)). Contract interpretation is a question of law only when "the interpretation does not depend on the use of extrinsic evidence," or "only one reasonable inference can be drawn from the extrinsic evidence." Tanner Elec. Coop, 128 Wn.2d at 674. "[B]reach and proximate cause are generally questions of fact for the jury." Briggs v. Pacificorp, 120 Wn. App. 319, 322, 85 P.3d 369 (2003) (citing Hertog v. City of Seattle, 138 Wn.2d 265, 275, 979 P.2d 400 (1999)).

The evidence here never set up a factual circumstance beyond possible dispute conclusively eliminating an essential element of PPM's claim on which it prevailed. Where the evidence was conflicting and resolution of the claim turned on a dispute of fact for the jury, we do not revisit its determination under the guise of RAP 2.2(a)(2).[6]

IV

Graham argues the trial court erred in awarding PPM prejudgment interest. We agree.

We review an award of prejudgment interest for an abuse of discretion and will reverse only if the trial court's decision was manifestly unreasonable or based on untenable reasons. Pub. Util. Dist. No. 2 of Pac. County v. Comcast of Wash.

---

[6] Alternatively, Graham argues that the trial court erred in denying its motion for summary judgment for PPM's failure to comply with the contract's notice provisions. But the matter went to trial, and a ruling denying summary judgment based upon the presence of material disputed facts is not reviewable after trial on the merits. Herring v. Dep't of Soc. & Health Servs, 81 Wn. App. 1, 14, 914 P.2d 67 (1996). This is especially so where, in instructions to which Graham took no exception, the jury was asked to determine whether the notice provisions on which it relies were factually applicable.

IV, Inc., 184 Wn. App. 24, 75, 336 P.3d 65 (2014). "Untenable reasons include errors of law." Noble v. Safe Harbor Fam. Pres. Tr., 167 Wn.2d 11, 17, 216 P.3d 1007 (2009).

Prejudgment interest is allowable "when an amount claimed is 'liquidated' " or "when the amount of an 'unliquidated' claim is for an amount due upon a specific contract for the payment of money and the amount due is determinable by computation with reference to a fixed standard contained in the contract, without reliance on opinion or discretion." Rekhter v. Dep't of Soc. & Health Servs., 180 Wn.2d 102, 124, 323 P.3d 1036 (2014) (quoting Prier v. Refrigeration Eng'g Co., 74 Wn.2d 25, 32, 442 P.3d 621 (1968)). A claim is liquidated "where the evidence furnishes data which, if believed, makes it possible to compute the amount with exactness, without reliance on opinion or discretion." Prier, 74 Wn.2d at 32. A claim is unliquidated "where the exact amount of the sum to be allowed cannot be definitely fixed from the facts proved, disputed or undisputed, but must in the last analysis depend upon the opinion or discretion of the judge or jury as to whether a larger or a smaller amount should be allowed." Id. at 33.

A claim is unliquidated where the amount claimed may not be arrived at by computation but instead required the jury to make an award based on opinion or discretion. E.g., Aker Verdal A/S v. Neil F. Lampson, Inc., 65 Wn. App. 177, 192, 828 P.2d 610 (1992) (claim for labor costs was unliquidated since "it was within the jury's discretion to determine a reasonable hourly rate"); Maryhill Museum of Fine Arts v. Emil's Concrete Constr. Co., 50 Wn. App. 895, 903, 751 P.2d 866 (1988) (claim was unliquidated where the costs and extent of repairs were disputed

and the trial court used its discretion in determining the reasonable cost of repairs); Ski Acres Dev. Co. v. Douglas G. Gorman, Inc., 8 Wn. App. 775, 781, 508 P.2d 1381 (1973) (claim was unliquidated where the jury resolved the reasonableness of the cost of repairing damage to a building).

Here, PPM sought compensation for 10 months of extended use of its bridge trestle equipment based on the fair market rental value in the amount of $1,623,074.12. PPM calculated this by multiplying the total steel weight of the equipment with the rental price per pound. PPM's vice president of operations testified,

> [I]t's the way the industry prices it. It's on a price-per-pound basis. So we're showing the price of—for the weight of our trestle that was out there. And then, you know, you would apply the market rate to come up with a value on a price-per-pound basis. And the market rate we're using here is the market rate established by [a] contractor who we rented [a] similar trestle to.

The owner and senior project manager for a general contractor company, reviewed the value of PPM's temporary trestles and testified the calculation "fit right within the median section of the market rate currently for [a] temporary trestle," and the number was "right in the middle of where that range was" for the 10 month period. The jury awarded PPM $339,889.00. PPM's damages depended on the likelihood of recovery from WSDOT had Graham pursued it further, based on a valuation that expressly depended on opinion. The measure of damages was dependent on the fact-finder's discretion. The trial court abused its discretion in concluding the claim was a liquidated sum and awarding PPM prejudgment interest.

16

V

Graham argues the trial court erred in concluding PPM was the prevailing party below and awarding it attorney fees. We disagree.

We award attorney fees only if authorized by a contract, statute, or recognized ground in equity. Bowles v. Wash. Dep't of Ret. Sys., 121 Wn.2d 52, 70, 847 P.2d 440 (1993). We review de novo a trial court's decision that a contract, statute, or recognized ground in equity authorizes an attorney fee award. Hawkins v. Diel, 166 Wn. App. 1, 10-11, 269 P.3d 1049 (2011). The subcontract here allowed for attorney fees, which applies to PPM through RCW 4.84.330. See Wachovia SBA Lending, Inc. v. Kraft, 165 Wn.2d 481, 489, 200 P.3d 683 (2009) ("By its plain language, the purpose of RCW 4.84.330 is to make unilateral contract provisions bilateral."). An award on attorney fees under RCW 4.84.330 is mandatory, with no discretion except as to the amount. Singleton v. Frost, 108 Wn.2d 723, 729, 742 P.2d 1224 (1987). Whether a party is a "prevailing party" is a mixed question of law and fact that we review under an error of law standard. Eagle Point Condo. Owners Ass'n v. Coy, 102 Wn. App. 697, 706, 9 P.3d 898 (2000).

" 'Prevailing party' " under RCW 4.84.330 means "the party in whose favor final judgment is rendered." Transpac Dev., Inc. v. Young Suk Oh, 132 Wn. App. 212, 217, 130 P.3d 892 (2006). If neither party wholly prevails, then the party that substantially prevails on its claims is the prevailing party. Id. The substantially prevailing party need not prevail on their entire claim. See Silverdale Hotel Assocs. v. Lomas & Nettleton Co., 36 Wn. App. 762, 774, 677 P.2d 773 (1984). A

defendant who successfully defends may be a prevailing party. Marine Enters., Inc. v. Sec. Pac. Trading Corp., 50 Wn. App. 768, 774, 750 P.2d 1290 (1988). However, where a defendant does not file a counter suit and instead "merely asserts that it defended a successful portion" of the plaintiff's suit, the successful defense of a portion of the plaintiff's suit does not make the defendant a prevailing party. Hawkins, 166 Wn. App. at 12.

Here, PPM prevailed on its breach of the duty of good faith and fair dealing claim, the subcontract contained a unilateral attorney fee provision, and so PPM was entitled to attorney fees under RCW 4.84.330. Like the defendant in Hawkins, Graham did not file a countersuit and otherwise did not obtain affirmative relief. PPM is the prevailing party in this case, and the trial court did not err in awarding it attorney fees.

Graham further contends the trial court erred in finding there was substantial overlap between claim 3 and the other claims. We review the trial court's decision whether to segregate attorney fees for an abuse of discretion. Loeffelholz v. Citizens for Leaders with Ethics & Accountability Now (C.L.E.A.N.), 119 Wn. App. 665, 690, 82 P.3d 1199 (2004). The trial court found that "[a]t the core, all five of PPM's claims substantially revolved around the same set of facts—Graham's extended use of PPM's trestles. PPM simply set forth different legal theories upon which to obtain compensation for this extended use."

"Where 'the plaintiff's claims for relief . . . involve a common core of facts or [are] based on related legal theories,' a lawsuit cannot be 'viewed as a series of discrete claims' and, thus, the claims should not be segregated in determining an

award of fees." Fiore v. PPG Indus., Inc., 169 Wn. App. 325, 352, 279 P.3d 972 (2012) (alterations in original) (internal quotation marks omitted) (quoting Brand v. Dep't of Lab. & Indus., 139 Wn.2d 659, 672-73, 989 P.2d 1111 (1999). Furthermore, a court "is not required to artificially segregate time . . . where the claims all relate to the same fact pattern, but allege different bases for recovery." Ethridge v. Hwang, 105 Wn. App. 447, 461, 20 P.3d 958 (2001). Here, PPM's claims arose out of the same set of facts and were based on related legal theories. PPM wanted additional compensation for Graham's extended use of the trestles, and each theory alleged was focused on this recovery. The trial court did not abuse its discretion in concluding the attorney fees could not be segregated.[7]

VI

Both parties seek attorney fees on appeal, citing RAP 18.1 and RCW 4.84.330. RAP 18.1 allows this court to award attorney fees and costs on appeal "[i]f applicable law grants to a party the right to recover reasonable attorney fees or expenses." Generally, where a prevailing party is entitled to attorney fees below, they are entitled to attorney fees if they prevail on appeal. Richter v. Trimberger, 50 Wn. App. 780, 786, 750 P.2d 1279 (1988). Because PPM is the

---

[7] Graham also argues that the trial court erred in not awarding Graham fees for claim 4, which the trial court found factually distinct from the other claims. However, Graham relies on Marassi v. Lau, 71 Wn. App. 912, 917, 859 P.2d 605 (1993), abrogated by Wachovia SBA Lending, Inc. v. Kraft, 165 Wn.2d 481, 200 P.3d 683 (2009), which held that "when the alleged contract breaches at issue consist of several distinct and severable claims, a proportionality approach is more appropriate." It is within a proportionality approach that the plaintiff and defendant are awarded for the claims prevailed upon, which are then offset. Id. Because the trial court did not use the proportionality approach, the trial court did not err in refusing to award Graham fees for defending claim 4.

prevailing party on appeal, we award it reasonable attorney fees. PPM must segregate fees devoted to the issue of prejudgment interest, on which it does not prevail.

We affirm the judgment and reverse imposition of prejudgment interest. We deny Graham's request for attorney fees, and award PPM the stated attorney fees on appeal, subject to its further compliance with this opinion and with RAP 18.1(d).

Birk, J.

WE CONCUR:

ACJ    Mann, J.